58010. MARTIN et al. v. LIBERTY COUNTY BOARD
OF TAX ASSESSORS.
58011. MARTIN et al. v. LONG COUNTY BOARD OF
TAX ASSESSORS.

CARLEY, Judge.

Appellant appeals in each case from a final judgment upholding, against his challenge, tax assessments on property located in the respective counties. The issues raised in both appeals are identical and are addressed in the consolidated opinion.

Appellant owns property in Long and Liberty Counties which was leased to a paper company for a thirty-five year period commencing in 1962. As consideration, appellant elected to receive cash payments totalling $216,540 during the first four years of the term and an annual rent in the amount of $2.75 per acre thereafter. The lease further obligated appellant for all ad valorem taxes assessed against the property.

In 1977 the respective county boards increased the appraised and assessed value of appellant's property. The boards did not consider the leasing agreement in determining the assessment against the property. Appellant appealed the reassessments to the County Boards of Tax Equalization which affirmed. Upon further appeal to the Superior Court of Long and of Liberty County, judgments were entered in favor of the county boards, upholding the assessments on appellant's property. While appellant urges several enumerations of error, the determinative issue presented for review is whether or not the county boards should have considered the existing leasing agreement in the determination of the fair market value of the property.

"All property shall be returned for taxation at its fair market value . . . " Code Ann. § 92-5701. The assessments here in issue were for the 1977 tax year. Therefore, the controlling definition of "fair market value" is found in former Code Ann. § 92-5702 (Ga. L. 1975, p. 96): "The intent and purpose of the tax laws of this State are to have

all property and subjects of taxation returned at the value which would be realized therefrom by cash sale, as such property and subjects are usually sold, but not by forced sale thereof, and the words 'fair market value,' when used in tax laws, shall be held and deemed to mean what the property and subjects would bring at cash sale when sold in the manner in which such property and subjects are usually sold. The tax assessors, in determining fair market value of real property, shall consider the following criteria: (a) existing zoning of property; (b) existing use of property; (c) existing covenants or restrictions in deed dedicating the property to a particular use; or (d) any other factors deemed pertinent in arriving at fair market value."

It is undisputed that the property is being "used" to grow timber. Appellant urges, however, that it is being used to grow timber commercially pursuant to a long-term lease, the terms of which, if considered by the boards, would have an adverse effect on the amount the property would bring at a cash sale.

Appellant's argument is clearly meritless. "In this State there can be several separate and distinct estates in the same parcel of land, and Code § 92-104 requires the owner of any estate in land less than the fee to return it for taxes and pay taxes on it as on other property. A leasehold is an estate in land less than the fee; it is severed from the fee and classified for tax purposes as realty. [Cit.]" *Delta Air Lines, Inc. v. Coleman* 219 Ga. 12, 16 (131 SE2d 768) (1963). Thus, when appellant conveyed an estate for years in his property, he conveyed a distinct estate in his land which carried with it a tax liability to the lessee. *Ferguson v. Leggett,* 226 Ga. 333 (174 SE2d 913) (19703, Appellant however, assumed the obligation to pay all taxes assessed against the property, including that which would otherwise be assessable against the leasehold. *Trust Co. of Ga. v. S. & W. Cafeteria,* 97 Ga. App. 268 (103 SE2d 63) (1958). Under these circumstances, the existence or nonexistence of a leasehold in his property would have no bearing on appellant's ultimate tax liability. That liability is based, in the final analysis, on the sum total of the respective "fair market values" of the taxable estates in the property. Thus, appellant's tax liability is predicated upon the "fair

market value" of the fee—the unity of his and his lessee's interests in the property—without consideration of its division into constituent estates. Appellant's argument that consideration should be given to the existence of the lease and its adverse effect on the "fair market value" oof the property would focus on what *his* remainder interest in the property would bring at a cash sale. Assuming, however, that the lease results in a decreased value of appellant's interest in the property, there would be a proportional increase in the "fair market value" of the leasehold. The "fair market value" of the estates merge to establish the "fair market value" of the fee. Where, as here, the taxpayer is ultimately liable for taxes on all interests in the land, the existence of a leasehold in the property is not a factor which can be raised in avoidance of this obligation. *Trust Co.,* supra. In our opinion, the existence of separate taxable interests and estates in the same property and a determination of their respective "fair market values" for assessment purposes is necessary only when the tax liability is likewise divided among the owners.

Furthermore, even when consideration of the existence of a leasehold in property is proper, appellant's argument that the *terms* of the agreement must be considered in determining the assessment of the "fair market values" of the estates is not persuasive. In urging that the "use" of his property is commercial timber production pursuant to a long-term lease the terms of which should have been considered by the boards in determining "fair market value," appellant would shift the focus of the tax assessment from the property itself to the private agreement between himself and the lessee. He would have the artificially low rental that he currently receives under the lease used to establish the "fair market value" of the property for taxation purposes. "Aside from such exemptions from taxation as may be provided by law [cits.], parties can not by any sort of contract defeat the right of the government to collect the taxes for which property would otherwise be liable. [Cits.]" *Real Estate Loan Co. v. Union City,* 177 Ga. 55 (1) (169 SE 301) (1933). Thus if the subject property "would otherwise be subject" to taxation at its fair market value, that right cannot be

defeated by private agreements which establish as between private parties the amount of income which will be derived from the "use" of the property.

Under appellant's argument that the terms of the lease are to be considered in the assessment of the "fair market value" of property for tax purposes, the tax liability of one who elects, as did appellant, to receive the greater part of the consideration in the early years of the lease, would be correspondingly greater during those years. Had the boards been obligated to consider "use" of the property during the first four years of the lease of appellant's property, we doubt if he would be so ardent an advocate of the argument he currently advances. If tax assessments on the same property were to fluctuate according to the varying terms of a lease, the computation of ad valorem taxes on the basis of such assessments would result in a tax penalty for one who, through business acumen or fortuity, succeeds in leasing his property for an amount in excess of its "fair market value" and a tax windfall to one who, through bad business judgment, leases far below his property's "fair market value." Such a method of evaluation would hardly produce assessments which were "fairly and justly equalized" as between taxpayers. Code Ann. § 92-6911. Taxing statutes should not be construed so as to create inequalities between taxpayers who own comparable parcels of substantially the same market value but who, for a variety of reasons, receive disproportionate incomes from the lease thereof.

"Use" of the property for tax assessment purposes refers to the activity or occupation which is pursued on the property and not to the taxpayer's election as to how the fee shall be divided in pursuit of that "use" nor the income derived as the result of that election. The record here reflects that the boards considered the actual present "use" of the subject property — commercial production of timber — and made their assessments accordingly by considering it as one determinative factor, but not the exclusive factor, in finding "fair market value" of the property. There was no error. *Chilivis v. Backus,* 236 Ga. 88 (222 SE2d 371) (1976).

*Judgments affirmed. Deen, C. J., and Shulman, J.,*

344

*concur.*

Submitted May 30, 1979 — Decided November 15, 1979.

*M. F. Martin, III,* for appellants.
*J. Noel Osteen,* for appellee (Case No. 58010).
*Albert Rahn, III,* for appellee (Case No. 58011).