37319, 37320. DeKALB COUNTY BOARD OF TAX
ASSESSORS v. W. C. HARRIS & COMPANY; and vice versa.
37321, 37322. DeKALB COUNTY BOARD OF TAX
ASSESSORS v. OHIO-SEALY MATTRESS
MANUFACTURING COMPANY; and vice versa.
37323, 37324. DeKALB COUNTY BOARD OF TAX
ASSESSORS v. NOLAND COMPANY; and vice versa.
37325, 37326. DeKALB COUNTY BOARD OF TAX
ASSESSORS v. LANIER BUSINESS PRODUCTS, INC; and
vice versa.

CLARKE, Justice.

These are ad valorem tax cases. The controlling issue is whether the interest held by certain corporations in real estate financed through a development authority is taxable as being fee simple or leasehold, or is it only a usufruct. The trial court determined the interest to be taxable as a leasehold. We agree.

The leases in question were individually executed between the DeKalb County Development Authority (hereinafter "Authority") and W. C. Harris & Co., Ohio-Sealy Manufacturing Co., Noland Co., and Lanier Business Products, Inc. (hereinafter "Taxpayers"). Each case originated with a decision by the DeKalb County Board of Tax Assessors (hereinafter "Assessors") that the long-term leases were in effect delayed warranty deeds which would subject the properties to valuation as a fee simple interest. Each Taxpayer appealed to the DeKalb County Board of Equalization (hereinafter "Equalization Board") which determined that the interest under each lease agreement was a leasehold and developed a formula for ad valorem tax valuation.

The Assessors appealed that decision to the superior court. Both sides moved for summary judgment and the court granted summary judgment to the Taxpayers, upholding the decision of the Equalization Board. The Assessors now appeal those judgments and the Taxpayers have each filed a cross appeal, contending that if the Equalization Board's decision was in error in its determination of the leasehold interests then the lease agreements must be construed to give the Taxpayers only a usufruct which would not be subject to ad valorem taxation.

1. These cases were originally docketed in the Court of Appeals which transferred the cases here on the basis of our decision in *Collins v. State,* 239 Ga. 400 (236 SE2d 759) (1977). The transfer order classifies these cases as involving the constitutionality of a municipal ordinance. There being no ordinance involved in this case, we feel it appropriate to examine our jurisdiction over this type of case under

*Collins,* supra.

The *Collins* decision was necessitated by an enactment of the legislature attempting to change Supreme Court jurisdiction by statute. The act at issue stated in part "The Supreme Court shall have jurisdiction of the trial and correction of errors of law in cases involving State revenue, contested elections, and the validity of legislative enactments of municipalities." Ga. L. 1977, pp. 710-711. After holding the legislature could not by statute change the constitutional jurisdiction of this court, we ordered the above-stated classes of cases to be docketed in the Court of Appeals and transferred to "effectuate the legislative intent of Act No. 299, Ga. L. 1977, p. 710." *Collins,* at 403.

Since that order went into effect, there have been contested ad valorem tax cases handled by the Court of Appeals as well as by this court. See *Henderson v. Tax Assessors, Camden County,* 156 Ga. App. 590 (275 SE2d 78) (1980); *Dotson v. Henry County Bd. of Tax Assessors,* 155 Ga. App. 557 (271 SE2d 691) (1980); *Loudermilk v. Cobb County Bd. of Tax Assessors,* 155 Ga. App. 591 (271 SE2d 723) (1980); *Camden County Bd. of Tax Assessors v. Proctor,* 155 Ga. App. 650 (271 SE2d 902) (1980); *Martin v. Liberty County Bd. of Tax Assessors,* 152 Ga. App. 340 (262 SE2d 609) (1979); *DeKalb County Bd. of Tax Assessors v. Stone Mountain Indus. Park,* 147 Ga. App. 503 (249 SE2d 318) (1978); *Mundy v. Clayton County Tax Assessors,* 146 Ga. App. 473 (246 SE2d 479) (1978). These cases are like the cases in these appeals in that there is no ordinance under attack, the constitutionality of a state law is not in question, and no extraordinary remedies are sought.

It is the opinion of this court that the Court of Appeals properly entertained jurisdiction in the cases cited above. These were disputes between property owners and local governing authorities concerning valuation of ad valorem tax assessments and not questions of "State revenue" as contemplated by Ga. L. 1977, p. 710, and as interpreted by *Collins.* This type of appeal from a local tax assessment does not challenge a state law or state assessment. Furthermore, there is no challenge to any ruling by the State Revenue Commissioner. In fact, the commissioner's authority does not generally extend to local ad valorem tax assessment or collection. Code Ann. § 91A-207 (d) (1) (former Code § 92-8447). Since the issue of jurisdiction in ad valorem tax assessment cases of this type had not been addressed since *Collins,* we shall reach the merits of the present case. However, we hold that in the future, appeals from a local governing authority's assessment of ad valorem taxation which do not raise the constitutionality of a statute or ordinance nor involve equitable remedies shall be in the jurisdiction of the Court of Appeals and not

transferred to this court under *Collins.*

2. In the case of each Taxpayer, the Authority issued industrial development revenue bonds and acquired fee simple title to the tracts of land in question. The property was then leased to the Taxpayers for the purposes of manufacturing, assembling and storing goods handled by the respective companies. The Authority executed a deed to secure debt as security for the bonds. The rights of the Authority to receive rental payments under the leases were also assigned.

The leases are for twenty and twenty-five year terms, and each contains a contract whereby the Authority agrees to sell the property and the Taxpayers agree to purchase the property for the consideration of ten dollars, once the revenue bonds are paid in full. The Assessors contend that the substance of the transactions give the Taxpayers a fee simple interest for ad valorem tax purposes.

The DeKalb County Development Authority was established pursuant to Chapter 69-15 of the Georgia Code. As an entity formed under this chapter, the Authority is exempt from the payment of taxes. Code Ann. § 69-1510. While the Authority is exempt, a business which takes a leasehold from the Authority is subject to ad valorem taxation on the fair market value of the possessory interest held. *Delta Air Lines v. Coleman,* 219 Ga. 12 (131 SE2d 768) (1963). "A leasehold is an estate less than the fee; it is severed from the fee and classified for tax purposes as realty." *Henson v. Georgia Indus. Realty Co.,* 220 Ga. 857 (142 SE2d 219) (1965).

In determining the interest held by the lessee, the court will look to the interest the parties to the agreement intended to create, although this intent may not be controlling. *Allright Parking of Ga., Inc. v. Atlanta-Fulton Bd. of Tax Assessors,* 244 Ga. 378 (260 SE2d 315) (1979); *Henson v. Airways Service, Inc.,* 220 Ga. 44 (136 SE2d 747) (1964). The Authority in this case is authorized by statute to either convey title or lease the project. Code Ann. § 69-1505. The DeKalb Authority has chosen long term leases with contracts to buy at nominal consideration at the end of the lease terms. The Assessors determined that the contract together with other provisions of the lease result in the Taxpayers holding an interest valued at a fee simple absolute.

"An absolute or fee-simple estate is one in which the owner is entitled to the entire property, with unconditional power of disposition during his life, and which descends to his heirs and legal representatives upon his death intestate." Code Ann. § 85-501. The leases require the Taxpayers to maintain insurance against all risks of the companies involved and require that the Taxpayers be liable for all taxes on their interest in the property. The Taxpayers may assign

and sublease the property and may in their discretion make modifications or improvements at their own expense. If the taxpayers perform under the leases, the Authority is obligated to convey title to the projects for a consideration of ten dollars.

While the leases contain terms consistent with absolute ownership, we agree with the trial court that other restrictions in the leases are not consistent with fee simple ownership. The leases require the Taxpayers to operate the projects throughout the terms of the lease for the sole purpose of continuing their respective business operations. The leases limit the expenditures which the Taxpayers can make on the properties and any plans for modification must be submitted to the Authority which has retained the right to inspect the premises. The Taxpayers are obligated to maintain their corporate existence throughout the lease terms. If the premises are sublet, the Taxpayers are still primarily responsible for rental payments and the premises must continue to be operated for the same project purposes. The Taxpayers agree not to convey their interests during the lease term and the Authority agrees that it will not convey or sell the property during the lease term except for the security instruments executed for the financing of the project. Furthermore, in the event of default by the lessee, the agreement gives the Authority the right to terminate the lease and exclude the lessee from possession.

The Taxpayers argue that under our decision in *Allright Parking of Ga.,* supra, their interest under the lease must be construed as a usufruct which is not subject to ad valorem taxation. That decision, however, points out that during the term of the lease, the lessor had the sole power to determine if the lessee could occupy the premises at all and could totally "preclude Allright from using any and all portions of the property during the construction and operation of MARTA and other 'public projects.' " *Allright,* at 387. There is a presumption in this state that where a lease agreement is for a term of more than five years, an estate for years is created. *Warehouses, Inc. v. Wetherbee,* 203 Ga. 483 (46 SE2d 894) (1948). We find that these provisions of these agreements, together with the contract to sell are not inconsistent with the creation of a taxable leasehold estate.

3. The remaining issues in these appeals concern the valuation formula applied by the Equalization Board and upheld by the trial court as well as the determination of time of possession. The first question to be determined is what is the fair market value of the leasehold interests held by the Taxpayers. Code Ann. § 91A-1008 (former Code Ann. § 92-5701.) "The fair market value of land, whether it be the fee, a leasehold, or any other interest, is a question which

necessarily addresses itself to the honesty, the experience, and the familiarity with land values in a given locality of the person or persons whose duty it becomes to determine and fix it." *Coleman,* supra at 18.

The Equalization Board examined the lease transactions and expert appraisal evidence was offered. The Equalization Board then held: "The appraisal technique to be used is as follows: First determine the total value of the property based on market rent. Second, determine the value of the leased fee by capitalizing the yearly bond repayment. Third, subtract this lease fee value from the total. Add to this figure the estimated reversion. This technique should be repeated on an annual basis, as the values will change over the period of the lease." The record shows that the formula is intended to take into account the fair market value of similarly leased property and to be based upon prevailing rents in the area. The potential reversionary interest is added to the base tax and will increase throughout the terms of the lease as the potential of the vesting of the potential reversionary interest in the Taxpayers increases. The fair market value of a leasehold interest must necessarily vary in accordance with the terms and conditions of each agreement as well as the nature and location of the property involved. We do not find the method of valuation utilized by the Equalization Board to be an arbitrary or unreasonable one, and hold the trial court did not err in approving the formula adopted in these cases.

4. The final point raised by the Assessors involves a determination by the Equalization Board that Noland Company and Lanier Business Products, Inc. owed no ad valorem taxes for the year 1979. These two projects were not completed as of January 1, 1979. A taxpayer must return property for taxation for property held as of January 1. Code Ann. § 91A-1008 (former Code Ann. § 92-6202). These two taxpayers did not obtain possession of the property in question until long after January 1, 1979. The lease agreements state that the Authority retains possession of the projects during construction, and that exclusive possession of the project be delivered to lessee on the date of completion. The agreements further state that the lease will become effective at the date of delivery. The trial court held that since Noland and Lanier had no right to possess or occupy the leasehold on January 1, 1979, the Equalization Board was correct in finding no ad valorem taxes were due for that period. The Assessors contend that since Noland and Lanier in fact "owned" the property once the lease agreements were executed and that the agreements were executed prior to January 1, 1979, those projects were subject to taxation on that date. Since we have held that the agreements do not constitute a conveyance for ad valorem tax purposes, the property was held by the Authority until delivery was

later made upon completion.

We affirm the ruling of the trial court in these cases. The judgment below granted a complete summary judgment as moved for by the Taxpayers in the superior court. Therefore, the alternative cross-appeals filed by each Taxpayer are hereby dismissed.

*Judgment affirmed in case numbers 37319, 37321, 37323 and 37325; case numbers 37320, 37322, 37324 and 37326 are dismissed. Jordan, C. J., Hill, P. J., Marshall, Smith & Gregory, JJ., concur.*

DECIDED OCTOBER 8, 1981.

*Robert H. Walling, Jones, Bird & Howell, Michael P. Sarrey,* for appellant.

*Smith, Cohen, Ringel, Kohler & Martin, John A. Blackmon, John C. Gordon,* for appellees.