A98A0410. J. C. PENNEY COMPANY, INC. v. RICHMOND COUNTY BOARD OF TAX ASSESSORS.
(504 SE2d 201)

RUFFIN, Judge.

In this tax matter concerning valuation of tangible personal property, J. C. Penney Company, Inc. ("J. C. Penney") appeals from the superior court's determination of the fair market value of J. C. Penney's inventory at its store in Augusta, Georgia, for the 1996 tax year. For reasons which follow, we reverse the superior court's decision and remand the case for further consideration.

The evidence shows that on January 3, 1996, the Richmond County Board of Tax Assessors ("the Board") sent J. C. Penney notice that, for taxation purposes, the fair market value of J. C. Penney's merchandise at the store was $3,194,296. J. C. Penney contested this figure, arguing that the acquisition cost of the inventory was $2,640,268 and that the fair market value was $1,397,000. In support of its claim, J. C. Penney submitted an appraisal report to the Board. J. C. Penney's appeal was certified to the Richmond County

Board of Equalization, which affirmed the Board's valuation.

J. C. Penney appealed to the superior court, which conducted a non-jury trial to review the evidence de novo. See OCGA § 48-5-311 (g) (3). At trial, the Board admitted that the $3,194,296 figure was incorrect and instead argued that the fair market value was $2,640,268, the acquisition cost of the inventory. J. C. Penney supported its claim that the fair market value was $1,397,000 through the testimony of an appraiser and a J. C. Penney employee who worked in the retailer's tax department.

Under J. C. Penney's proposed valuation method, "seller" was defined for purposes of determining fair market value as an entity or business that was willing to purchase all of J. C. Penney's goods and then proceed to take J. C. Penney's place in the business arena. J. C. Penney argued that in determining fair market value the tax assessors should have started with the cost of the inventory and then adjusted for all markdowns that occurred on January 1, 1996, when the merchandise was appraised. According to J. C. Penney, these markdowns occurred because certain merchandise had not been popular with consumers and thus was obsolete or less valuable. J. C. Penney argued that the other factor the tax assessors needed to consider was J. C. Penney's name brands. J. C. Penney maintained that if another business entity purchased all of J. C. Penney's goods at one time and took over J. C. Penney's operations, the new entity would not have paid as much for the lines of clothes over which J. C. Penney had sole control. According to J. C. Penney, the labels on this merchandise had to be removed before the new business entity would have been able to sell it. To summarize J. C. Penney's calculations, the retailer started with the cost of the inventory, $2,640,268, subtracted the economic obsolescence of the goods (the markdowns on merchandise not yet sold), and then subtracted the label merchandise to arrive at the figure of $1,397,000.

In disagreeing with the Board's argument that the acquisition cost equaled the fair market value of the property, J. C. Penney's accountant explained that "[t]here are three terms: there's price which is what things are marked at or what somebody may ask; there is cost which is what somebody may pay for something; and there is value which is what it is worth." The accountant further stated that generally "cost and fair market value are alike [only] by coincidence." He then presented evidence showing that acquisition cost and fair market value in this instance were not alike.

The Board presented no witnesses or evidence at trial. Nevertheless, the superior court agreed with the Board's valuation and in a cursory order found the fair market value to be $2,640,000. J. C. Penney appealed to this Court.

"Just and fair valuation of property is a question to be deter-

mined by the factfinder, here, the trial court. [Cit.] On appellate review, the trial court's determination must be affirmed unless it is clearly erroneous. OCGA § 9-11-52 (a)." *Dougherty County Bd. of Equalization v. Casto Dev. Co.*, 228 Ga. App. 293, 295 (491 SE2d 483) (1997). Moreover, "[o]n appeal, this court considers the sufficiency of the evidence and not its weight. [Cit.]" *Hawkins v. Grady County Bd. of Tax Assessors*, 180 Ga. App. 834, 835 (3) (350 SE2d 790) (1986).

For ad valorem tax purposes "[a]ll property shall be returned for taxation at its fair market value. . . ." OCGA § 48-5-6. Fair market value of property is "the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale." OCGA § 48-5-2 (3). "It is the duty of the board of tax assessors to 'see that all taxable property within the county is assessed and returned at its fair market value and that fair market values as between individual taxpayers are fairly and justly equalized so that each taxpayer shall pay as near as may be only his proportionate share of taxes.' [Cit.]" (Emphasis omitted.) *Rogers v. DeKalb County Bd. of Tax Assessors*, 247 Ga. 726, 728 (2) (279 SE2d 223) (1981). See also *Colvard v. Ridley*, 218 Ga. 490 (128 SE2d 732) (1962).

We recently addressed the issue of determining fair market value of inventory in *Eckerd Corp. v. Coweta County Bd. of Tax Assessors*, 228 Ga. App. 94, 103 (3) (491 SE2d 173) (1997). In *Eckerd*, the appellant argued that the tax assessors had improperly assessed its inventory at cost because cost and fair market value are exclusive of one another. We disagreed, holding that "[w]hile we agree that property must be assessed at fair market value, OCGA § 48-5-6, 'cost' is not a concept foreign to such valuation. What the taxpayer was willing to pay for the personalty, its cost to him, is one of the factors from which fair market value may be determined, if not the primary factor, because such figure is fixed, while other factors may deviate upward or downward from such figure based upon the fair market." Id. at 103. We further stated that "[f]or ad valorem tax purposes, fair market value is not the retail value to the taxpayer, but the current wholesale value adjusted for the fair market; thus, the taxpayer's cost may be adjusted upward, downward, or remain the same to reflect the 'wholesale market' as it determines the fair market value of the tangible personalty in the taxpayer's possession at that economic moment in time." Id. at 103-104. Finally, we determined that it is possible in a stagnant economy that cost may equal fair market value. Id.

In this case, the burden of proof was on J. C. Penney as the party who initiated the appeal to the superior court. See *Hawkins*, supra. However, the Board was not entitled at trial to "any prima facie presumption regarding the correctness of its evidence of valuation. . . ."

(Punctuation omitted.) *Hirsch v. Joint City County Bd. of Tax Assessors*, 218 Ga. App. 881, 882 (1) (463 SE2d 703) (1995). See also *Hodsdon v. Duckett*, 135 Ga. App. 922, 923 (219 SE2d 634) (1975).

J. C. Penney presented evidence through an extensive appraisal report and the testimony of two experts to explain why the acquisition cost of the inventory needed to be adjusted downward to arrive at the inventory's fair market value. J. C. Penney's approach was consistent with the formula for determining fair market value espoused in *Eckerd*. This evidence was uncontroverted, as the Board put forward no evidence or expert testimony. Accordingly, the only evidence on which the trial court could have based its determination of value was J. C. Penney's evidence that the fair market value of the inventory was less than its acquisition cost. In light of J. C. Penney's unrefuted testimony and the fact that the Board's valuation was not to be presumed correct, there was insufficient evidence upon which the trial court could base its decision that the fair market value of the inventory equaled the inventory's acquisition costs. See *Hodsdon*, supra (jury verdict reversed as values upon which assessments were based did not fall into range of taxpayers' value testimony and tax assessors offered no evidence); *Evans v. Bd. of Tax Assessors of Henry County*, 168 Ga. App. 792 (310 SE2d 562) (1983) (physical precedent only) (there was no basis in the transcript to support trial court's valuation of the property which did not comport with only evidence of valuation presented by taxpayers' experts). Compare *Hirsch*, supra (tax assessors presented testimony of expert appraiser, such that the superior court was not left to speculate based upon guesswork and unsupported conclusions as to the fair market value of property); *Hawkins*, supra (evidence presented by tax assessors was sufficient to authorize jury verdict as to fair market value of property); *Casto Dev. Co.*, supra (expert testimony presented on behalf of tax assessors provided the trial court with an adequate basis for determining value and trial court was not left to engage in speculation, guesswork or unsupported conclusions). The trial court's determination of J. C. Penney's inventory's value cannot be affirmed in this instance as the trial court, in making its determination, ignored the only evidence put forward at trial and based its decision on unsupported conclusions and guesswork. *Hodsdon*, supra; *Evans*, supra. Accordingly, the judgment of the trial court is reversed, and the case is remanded for a new valuation based on the valuation testimony presented at trial. Id.

*Judgment reversed and remanded. Pope, P. J., and Beasley, J., concur.*

DECIDED JUNE 5, 1998 —
RECONSIDERATION DENIED JULY 14, 1998 — 

*Smith, Gambrell & Russell, Edward K. Smith, William B. Wood,* for appellant.

*Burnside, Wall, Daniel, Ellison & Revell, Harry D. Revell,* for appellee.