## A99A1505. COWETA COUNTY BOARD OF TAX ASSESSORS v. EGO PRODUCTS, INC.
### (526 SE2d 133)

Smith, Judge.

The Coweta County Board of Tax Assessors appeals an order affirming a decision by the Coweta County Board of Equalization valuing certain personal property of a taxpayer, EGO Products, Inc., at 50 percent of the property's fair market value for ad valorem tax purposes. Because we find no constitutional or statutory authority that permits the award of this tax advantage to EGO Products, we reverse.

EGO, a supplier of component parts to the makers of large appliances, has maintained a facility in Coweta County since 1982. In 1995, when EGO was contemplating relocating its production line from Coweta County, it contacted the Georgia Department of Industry, Trade & Tourism, which arranged a meeting involving EGO, the Georgia Department of Labor, and the Coweta County Development Authority. The development authority proposed funding an expansion and modernization of EGO's facility through industrial revenue bonds.

Ultimately, industrial revenue bonds were issued to fund a project worth approximately $7 million, of which about $6.6 million was used to fund EGO's highly automated production line and the balance to fund real property improvements and other expenses. Under the terms of the financing agreement, EGO deeded its real property and sold its equipment to the authority. The authority then leased both the real and personal property to EGO for the life of the bonds, 15 years. Under the terms of the leasing agreement, the authority pledged to provide a 50 percent reduction in EGO's property taxes.

EGO's new assembly line opened officially in May 1996, and the company received its first tax notice in 1997. The board of tax assessors, however, provided a 50 percent tax abatement only as to EGO's real property and not as to the personal property that was the bulk of the expansion project. After EGO appealed, the board of equalization ordered that the tax abatement be applied to the entire project, finding the personal property "to be taxable only to the extent of the

leaseholder agreement."

Under OCGA § 48-5-311 (g), the board of assessors appealed this decision to superior court. After a bench trial, the court found that EGO's personal property purchased through industrial revenue bonds was entitled to a leasehold interest value of 50 percent of its fair market value. The board of assessors appeals that ruling.

1. The board of assessors contends the trial court erred in finding the value of EGO's leasehold interest in its personal property at 50 percent of its actual fair market value, since no evidence supporting such a valuation was presented to the court for consideration. The board claims that neither the leasing agreement nor any representations purportedly made by the authority obligated the board to reduce EGO's tax burden on this personal property. The board further asserts that such a reduction violates the uniformity requirements of the state constitution. We agree.

The value of EGO's leasehold interest in the personal property is not in dispute. In fact, the board and EGO stipulated to its value as being $6,182,393. Consequently, at issue is whether the trial court erred as a matter of law in finding that EGO was entitled to receive a tax reduction for the personal property being leased from the authority under an industrial revenue bond agreement. See *Leverett v. Jasper County Bd. of Tax Assessors*, 233 Ga. App. 470, 471, n. 1 (504 SE2d 559) (1998) ("any evidence" rule does not apply to review of legal errors).

For ad valorem tax purposes "[a]ll property shall be returned for taxation at its fair market value. . . ." OCGA § 48-5-6. A board of assessors incurs a statutory duty to ensure that all taxable property within a county is assessed and returned at its fair market value and that such fair market values as between individual taxpayers are fair and justly equalized. *J.C. Penney Co. v. Richmond County Bd. of Tax Assessors*, 233 Ga. App. 399, 401 (504 SE2d 201) (1998). This board therefore had an obligation to ensure that the assessment and valuation of EGO's personal property was fair, uniform, and justly equalized. See *Rogers v. DeKalb County Bd. of Tax Assessors*, 247 Ga. 726, 728 (2) (279 SE2d 223) (1981).

Unquestionably, the personal property that EGO leases from the authority is not tax-exempt. Part of the local amendment that created the Coweta County Development Authority provides in pertinent part, "[t]he exemption from taxation herein provided shall not extend to tenants nor lessees of the Authority." Ga. L. 1966, p. 1102, § 1, subpart C. Compare *Hart County Bd. of Tax Assessors v. Dunlop Tire &c. Corp.*, 252 Ga. 479, 480 (314 SE2d 188) (1984) (local amendment exempted from ad valorem taxation property owned by the Hart County Industrial Development Authority and leased by a private corporation). Although the authority was exempt from taxes,

EGO as "a business which takes a leasehold from the Authority is subject to ad valorem taxation on the fair market value of the possessory interest held. [Cit.]" *DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*, 248 Ga. 277, 279 (2) (282 SE2d 880) (1981).

Despite EGO's claim to the contrary, the provisions of the lease do not resolve the tax valuation issue. Section 6.7 of the leasing agreement entitled, "Special Covenants Related to Ad Valorem Taxation" provides: "(a) The Company's leasehold interest in the project shall be valued at 50 percent of the fee simple valuation of the project for ad valorem tax purposes, for a period of fifteen years from the date of the certificate of compliance of the project." The agreement further states:

> (b) The Company and the Issuer acknowledge that the leasehold valuation formula described above takes into account the fair market value of similarly leased property and the prevailing rents charged in the geographic area of the project. The Coweta County Board of Assessors and the County believe that this method is fair, equitable and uniform treatment under the provisions of O.C.G.A. section 48-5-3.

But this special covenant makes no mention of personal property. By using such terms as "fee simple valuation," "fair market value of similarly leased property," and "prevailing rents charged in the geographic area," section 6.7 appears to apply to real property. It cannot fairly be concluded that this language would have put the board on notice at the bond validation proceeding that the lease contained a covenant applicable to EGO's personal property. Compare *Miller v. Columbus*, 229 Ga. 234, 236 (2) (190 SE2d 535) (1972) (unappealed judgment of bond validation was conclusive on question of the validity of the bonds and the underlying security).

For nearly 30 years, the board had subjected leasehold interests in real property to a 50 percent tax abatement, in part, to simplify its own record keeping.[1] The board's evidence demonstrated the board's long-standing policy of taxing leasehold interests in real property that are the subject to a financing agreement like the one here at 50 percent of the appraised value for the term of the lease. See *W. C. Harris & Co.*, supra at 281 (3) (method of valuation of leasehold interest must not be arbitrary or unreasonable). But no evidence showed that any other taxpayer who leased personal property financed by industrial revenue bonds from the authority sought and

---

[1] The board derived the 50 percent figure by determining that a lessee would be gradually acquiring a greater interest in the real property over the lease's term, but to simplify its record keeping the board would set the value of real property at a flat 50 percent.

obtained a similar reduction in the value of such personalty. See generally *Eckerd Corp. v. Coweta County Bd. of Tax Assessors*, 228 Ga. App. 94, 95 (1) (491 SE2d 173) (1997) (assessment and taxation of real and tangible property differ procedurally).

The board's chief personal property appraiser, Beverly Ward, explained that the fair market value of the personal property at issue here was determined by taking the value of the fixed assets, machinery, equipment, furniture, and fixtures and grouping them into classifications based on the economic life of the equipment. The analysis considered the original cost, appreciation, and year of purchase of the personalty. According to Ward, she had never known of any other entity that obtained financing with the authority and then received a 50 percent reduction on the valuation of personal property.

Former board chairman Theron Gay, who had been affiliated with the tax office since 1981, also testified that he could not recall any occasion on which the 50 percent reduction had been applied to personal property. According to Gay, the policy "we always followed was to allow the reduction of 50 percent of all the land and buildings to the real property portion of those properties financed under IRB's and titled to the Development Authority." Similarly, board member Michael Marchese, who had been associated with the tax office since 1985, testified that while he agreed that the real property was entitled to the 50 percent reduction, he was aware of no personal property that had been classified as real property to obtain the 50 percent reduction.

Theron Gay testified that while real property in Coweta County generally appreciates in value over time, personal property is different. According to Gay, some personal property such as computer equipment becomes obsolete and "depreciates very rapidly." Consequently, such property may have little value by the end of a long-term lease.[2]

To permit a 50 percent reduction of the value of such personal property over an extended period could allow a significant portion of the value of that personal property to elude taxation or to be taxed at far less than its actual value. The bulk of EGO's production line equipment that EGO has regularly used since 1996, and in which it plainly holds a possessory interest, would not be subject to taxation on the basis of its actual fair market value. See *W. C. Harris & Co.*, supra at 279 (2) (business with leasehold interest obtained from authority is subject to ad valorem taxation on the fair market value

---

[2] This leased property included: production, assembly, and testing equipment for the manufacturing of electric heating elements for smoothtop electric ranges; automated thermostat calibration equipment; programmable computerized equipment controllers; and quality endurance test stations with controllers, including automatic cyclers and counters.

of that possessory interest). To treat EGO's personal property in this fashion would violate the requirement that taxable property in the same class within a county be assessed justly and with uniformity among similarly situated taxpayers. See *Rogers*, supra at 728 (2) (same standard or system must be used in calculating the taxable value of all property within the same class).

The record belies EGO's assertion that other taxpayers were afforded similar treatment or that the board had such a policy.[3] Even assuming without deciding that section 6.7 was intended by the parties to apply to personal property as well as real property, EGO cites no authority that would permit a lease to circumvent the state constitutional requirement of uniform taxation or the statutory requirement that all property be returned for taxation at its fair market value. Ga. Const., Art. VII, Sec. I, Par. III; OCGA § 48-5-6. Compare *Dunlop Tire*, supra at 481.

Despite EGO's claim to the contrary, *Charlton Dev. Auth. v. Charlton County*, 253 Ga. 208, 209 (317 SE2d 204) (1984) neither requires nor authorizes a different result. In *Charlton*, unlike here, the superior court in a bond validation proceeding specifically determined that a certain "tax levy agreement" had been " 'properly authorized and entered into' " between the development authority and Charlton County. Id. at 209. But here, it is undisputed that neither the county nor the board was a party to the lease agreement between the authority and EGO.[4] EGO cites no authority, and we know of none, that would empower an authority acting alone, and without notice to a county, to excuse a taxpayer from paying a substantial portion of its property tax obligation. See OCGA § 36-62-6. Nor does an authority have the power to determine valuation or to grant a reduction in personal property taxes that would result in unequal tax liability among individual taxpayers. See *Hutchins v. Candler*, 209 Ga. 415, 419 (2) (73 SE2d 191) (1952). Since the trial court erred as a matter of law in reducing the value of EGO's personal property by 50 percent, that judgment must be reversed. *J.C. Penney*, supra at 402; see *Hawkins v. Grady County Bd. of Tax Assessors*, 180 Ga. App. 834, 835 (3) (350 SE2d 790) (1986) (on appeal, the sufficiency of the evidence of valuation must be considered).

2. In light of the above holding, we need not reach the remaining enumerations of error.

---

[3] Glen Butler, the president of EGO, testified that he did not know "that there would ever be an issue between personal property and real property. We never even discussed that."

[4] The chairman of the authority, Mike Barber, testified that the lease was not presented to the Board of Tax Assessors or to the county commissioners. Board member Marchese testified that before the trial he had not seen a copy of the lease.

*Judgment reversed. Pope, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 23, 1999.

*Glover & Davis, Asa M. Powell, Jr., Jerry A. Conner*, for appellant.

*Wood, Odom & Edge, H. Parnell Odom, Alston & Bird, Peter M. Degnan, Paul J. Kaplan*, for appellee.