S10A0924. SHERMAN v. FULTON COUNTY BOARD OF ASSESSORS et al.

(701 SE2d 472)

CARLEY, Presiding Justice.

On June 26, 2009, John Sherman, a taxpayer and resident of Fulton County, filed on behalf of himself and all others similarly situated, a petition for declaratory judgment, injunction, and mandamus against the Fulton County Board of Assessors and its chief appraiser and members in their official capacities (FCBOA). The trial court permitted the Development Authority of Fulton County (DAFC) to intervene. In his petition, Sherman contends that the method of valuing leasehold estates arising from a local development authority sale-leaseback bond transaction is illegal, unconstitutional, ultra vires and constitutes a failure of FCBOA and DAFC (Appellees) to perform their duty.

A bond transaction leasehold estate is created when a local development authority, in accordance with its redevelopment powers, enters into a bond transaction agreement with a private developer of certain real property. The local development authority issues revenue bonds under a financing program to the developer, who conveys to the authority fee simple title to the property. The development authority and the developer then enter into a multi-year lease arrangement whereby the authority, as owner, leases the property to the developer. The resulting lease payments are used by the local development authority to make the principal and interest payments on the revenue bonds. The terms of the agreement allow the developer to repurchase the fee simple estate for a nominal amount once the revenue bonds are paid down or retired.

As part of the transaction, the parties enter into a written agreement that sets forth a specific method for determining the fair market value of the resulting leasehold estate held by the private developer. The method estimates the initial fair market value of the leasehold estate to be 50 percent of the fair market value of the fee simple estate. The estimated value of the leasehold estate is then "ramped up" by five percent per year. By the eleventh year, the leasehold estate is valued at 100 percent of the fair market value of the fee simple estate.

Sherman seeks the following relief: a declaration that this valuation method, used by Appellees and allegedly codified in OCGA § 36-80-16.1 (e), violates the Georgia and United States Constitutions; an injunction prohibiting Appellees from using this valuation method for purposes of determining the fair market value of leasehold estates created by a revenue bond transaction; and a writ of mandamus ordering Appellees to commence determining the actual fair market value of all existing leasehold estates and to reassess all such leasehold estates for all prior years that the valuation method at issue was used. The trial court entered an order granting a motion to dismiss filed by FCBOA and a motion for judgment on the pleadings filed by DAFC, and denying a motion for partial summary judgment filed by Sherman. Sherman appeals from that order, contending that the dismissal of the petition and the grant of judgment on the pleadings were erroneous.

The standard of review for the dismissal of a petition for failure to state a claim upon which relief may be granted is de novo, and " " " "all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor." (Cit.)' [Cit.]" *Southstar Energy Services v. Ellison*, 286 Ga. 709, 710 (1) (691 SE2d 203) (2010).

"(A) motion to dismiss for failure to state a claim upon which relief can be granted 'should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. . . .' (Cit.)" [Cit.]

*Southstar Energy Services v. Ellison,* supra. "If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. [Cits.]" *Anderson v. Flake,* 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

" 'For the purposes of [a] motion [for judgment on the pleadings], all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false.' [Cit.]" *Ware v. Fidelity Acceptance Corp.,* 225 Ga. App. 41, 44 (3) (482 SE2d 536) (1997). A motion for judgment on the pleadings should "be granted only if . . . the moving party is clearly entitled to judgment." *Gulf American Fire & Casualty Co. v. Harper,* 117 Ga. App. 356 (1) (160 SE2d 663) (1968).

Construed in favor of Sherman, the petition alleges that Appellees, by using the above-referenced valuation method, have intentionally valued bond transaction leasehold estates for purposes of ad valorem taxation at less than fair market value. Sherman claims that Appellees' alleged undervaluation of these leasehold estates violates their duty to "see that all taxable property within the county is assessed and returned at its fair market value and that fair market values as between the individual taxpayers are fairly and justly equalized. . . ." OCGA § 48-5-306 (a). He also alleges violations of several provisions in the Georgia and United States Constitutions, including the uniformity of taxation provision. The overriding issue in this case is whether the valuation method used by Appellees fairly and justly establishes the fair market value of a bond transaction leasehold estate such that the method is not "arbitrary or unreasonable." *DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co.,* 248 Ga. 277, 281 (3) (282 SE2d 880) (1981).

Appellees have failed to show that they are clearly entitled to judgment and that no evidence may be introduced sufficient to grant the relief sought by Sherman. In fact, Sherman provided such evidence in the trial court in the form of an affidavit of a qualified expert real estate appraiser, which specifically opines that the

valuation method used by Appellees does not fairly and accurately determine the fair market value of a bond transaction leasehold estate and thus is arbitrary and unreasonable. In a previous dispute over the proper valuation method for determining the fair market value of real property for purposes of ad valorem taxation, this Court stated that, "[a]lthough the tax assessors or the property owners, or both, may be incorrect as a matter of fact, such determination cannot be made on motion for summary judgment. . . ." *Dougherty County Bd. of Tax Assessors v. Burt Realty Co.*, 250 Ga. 467, 469 (298 SE2d 475) (1983). See also *Delta Air Lines v. Clayton County Bd. of Tax Assessors*, 246 Ga. App. 225, 235 (4) (539 SE2d 905) (2000) ("Determination of the fair market value of the property involved is generally a question for the trier of fact. [Cits.]"); *J.C. Penney Co. v. Richmond County Bd. of Tax Assessors*, 233 Ga. App. 399, 400-401 (504 SE2d 201) (1998) (" 'Just and fair valuation of property is a question to be determined by the factfinder. . . . (Cit.)' "). Clearly then, that determination can rarely be made under the more stringent standards applicable to motions to dismiss for failure to state a claim and motions for judgment on the pleadings.

It is clear that county boards of tax assessors are not required to use any particular appraisal approach or method when determining the fair market value of property for purposes of ad valorem taxation. See *Rogers v. DeKalb County Bd. of Tax Assessors*, 247 Ga. 726, 728 (2) (279 SE2d 223) (1981) (" 'The object of the assessors must be to determine the fair market value of the property subject to taxation in the county and the methods employed may be varied if the object is attained.' [Cit.]"); *Lamplight Court Apartments v. DeKalb County Bd. of Tax Assessors*, 259 Ga. App. 642, 643 (1) (577 SE2d 814) (2003) (" '[I]t is not impermissible under the uniformity of taxation provision of the constitution to apply different methods of arriving at the fair market value of tangible property.' "). However, this does not mean that the boards "can act with unlimited discretion. . . ." *Cross v. Miller*, 221 Ga. 579, 581 (1) (146 SE2d 279) (1965). The law still requires valuations to be just and fair between all taxpayers of the county. *Cross v. Miller*, supra. The valuation methods used must not be "arbitrary or unreasonable." *DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co.*, supra. Therefore, it cannot be said that, within the framework of the petition, no evidence could be introduced that would support a finding that the valuation method used by Appellees unfairly undervalues the fair market value of a bond transaction leasehold estate and thus is arbitrary or unreasonable.

Appellees contend that they have authority for the use of their valuation method pursuant to the decisions upholding similar valuation methods for bond transaction leasehold estates in *DeKalb*

*County Bd. of Tax Assessors v. W.C. Harris & Co.*, supra, and *Coweta County Bd. of Tax Assessors v. EGO Products*, 241 Ga. App. 85, 87-88 (1) (526 SE2d 133) (1999). However, neither of those cases involved a motion to dismiss or for judgment on the pleadings. Furthermore, both cases are otherwise distinguishable from the case at bar.

In *DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co.*, supra, this Court determined that a valuation method applied by the local county board of tax assessors to a bond transaction leasehold estate was not "arbitrary or unreasonable." To reach that conclusion, this Court pointed to evidence in the record that the method followed an authorized income appraisal approach that "[took] into account the fair market value of similarly leased property and [was] based upon prevailing rents in the area." *DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co.*, supra. Moreover, this Court emphasized that "[t]he fair market value of a leasehold interest must necessarily vary in accordance with the terms and conditions of each agreement as well as the nature and location of the property involved." *DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co.*, supra. In this case, the record does not show that Appellees' valuation method was derived by following an authorized appraisal approach or that it took into account similarly leased property in the area, the market rents in the area, or the terms and conditions of each lease agreement. Although Appellees have proffered an affidavit describing the rationality behind a ramp-up formula, the formula used for the calculations set forth in that affidavit is substantially different than the formula presently at issue. The formula described in Appellees' affidavit requires ten years on the life of the lease before the developer can invoke its option to repurchase the fee simple estate for a nominal amount. The formula in this case allows for a repurchase at any time once the lease begins. This difference is essential, especially considering that, according to Appellees' affidavit, "[a]lmost all of the leasehold value represented by the lease is represented by the [repurchase option] in the real property at the end of the lease term." Thus, the affidavit appears to be inapplicable to the formula at issue in the present case. Moreover, Sherman must be given the opportunity to refute that affidavit rather than having his complaint dismissed.

In *Smith v. Elbert County Bd. of Tax Assessors*, 292 Ga. App. 417, 418 (2) (664 SE2d 786) (2008), a taxpayer also challenged the methodology employed by the county board of tax assessors to value her property. The Court of Appeals upheld the challenged method because "the Board presented evidence both of the methodology it employed and that its methodology resulted in a determination of fair market value." *Smith v. Elbert County Bd. of Tax Assessors*, supra. Although the methodology employed in the present case is

clear, Appellees have not presented evidence that this methodology actually resulted in a fair valuation of the leasehold estate. Appellees argue that their initial valuation of the fee simple estate follows an authorized appraisal approach and takes into account some of the factors referenced above, such as similarly leased properties in the area and the market rents in the area. However, a valuation of the fee simple estate is just the first step. Appellees will need to offer evidence as to how their method applied to the leasehold estate incorporates the requisite factors. They assert that we should just assume that every leasehold estate is worth 50 percent of its fee simple estate, but offer no evidence to support this assumption. Without such evidence, and in light of the affidavit filed by Sherman to the contrary, we are unable to determine, pursuant to *DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co.*, supra, that the valuation method used by Appellees is not arbitrary and unreasonable, and therefore the petition should not have been dismissed pursuant to OCGA § 9-11-12 (b) (6).

Appellees' reliance on *Coweta County Bd. of Tax Assessors v. EGO Products*, supra, is also misplaced. In that case, a taxpayer challenged a county board's valuation of its personal property for purposes of ad valorem taxation. *Coweta County Bd. of Tax Assessors v. EGO Products*, supra at 86. In a footnote, the Court of Appeals described a method used by the county board to value the taxpayer's bond transaction leasehold estate which "set the value of [the] real property at a flat 50 percent." *Coweta County Bd. of Tax Assessors v. EGO Products*, supra at 87 (1), fn 1. Appellees argue that the mention of this set percentage valuation method for a bond transaction leasehold estate shows approval by the court for the use of such a method. However, the substantive issue in that case was a challenge to the valuation method applied to the taxpayer's leasehold interest in the personal property, not in the real property. A challenge to the leasehold valuation method applied to the real property was not before the court and thus was not ruled upon by the court. The footnote's purpose was informational only and therefore is not authority for the valuation method at issue in this case.

Appellees also contend that OCGA § 36-80-16.1 (e) provides statutory authorization for the use of their valuation method. This provision gives county boards of tax assessors authority to determine the fair market value of bond transaction leasehold estates by using a valuation method "based on assessments of the increasing interest of the [lessee] in the real or personal property, or both, over the term of the lease, or to use a simplified method or methods employing a specified percentage. . . ." OCGA § 36-80-16.1 (e). Although OCGA § 36-80-16.1 (e) gives county boards of tax assessors authority to use certain simplified methods for determining the value of a bond

transaction leasehold estate, the statute does not purport to relieve Appellees from their duty to value the leasehold estate at its fair market value. Any contention that the statute does allow Appellees to value a bond transaction leasehold estate at less than its fair market value would make the statute illegal and unconstitutional. See OCGA § 48-5-306 (a), supra; *Griggs v. Greene*, 230 Ga. 257, 267 (4) (197 SE2d 116) (1973) ('' '[T]he requirement in the Constitution that the rule of taxation shall be uniform, means that all kinds of property of the same class . . . must be taxed alike, by the same standard of valuation. . . .' [Cits.]''). Thus, OCGA § 36-80-16.1 (e) does not bear upon the overriding issue in this case of whether the valuation method used by Appellees fairly and justly approximates the fair market value of a bond transaction leasehold estate. Therefore, it would not be appropriate to address the constitutionality of the statute in the present case. See *Grantham v. Grantham*, 269 Ga. 413, 414 (2) (499 SE2d 67) (1998) (''a reviewing court will decide a case on constitutional grounds as a matter of last resort ([Cits.])''); *Bell v. Austin*, 278 Ga. 844 (1) (607 SE2d 569) (2005) (''A constitutional question will not be decided unless it is essential to the resolution of the case. [Cit.]'').

Finally, the dissent contends that the present action is barred because it amounts to a collateral attack on concluded bond validation proceedings which is proscribed by Georgia law. See Ga. Const. of 1983, Art. IX, Sec. VI, Par. IV; OCGA § 36-82-78; *Quarterman v. Douglas County Bd. of Commissioners*, 278 Ga. 363 (602 SE2d 651) (2004). However, the restriction on challenging matters addressed in bond validation proceedings only attaches to those matters that are referenced and adjudicated in those proceedings. For example, in *Charlton Development Auth. v. Charlton County*, 253 Ga. 208, 209 (317 SE2d 204) (1984), this Court upheld a tax levy agreement that ''was referred to in the pleadings and final judgment in the bond validation proceedings.'' A second tax levy agreement was held by this Court to be unenforceable because it was ''in no manner . . . mentioned in the order validating the bonds and security.'' *Charlton Development Auth. v. Charlton County*, supra. Furthermore, every case cited by the dissent upholds only those agreements that were specifically adjudicated valid in the bond validation proceedings. See *Quarterman v. Douglas County Bd. of Commissioners*, supra at 365 (challenged ''intergovernmental contract . . . was specifically found in the validation order to constitute a legal, valid, binding, and enforceable obligation''); *Ambac Indemnity Corp. v. Akridge*, 262 Ga. 773, 775 (1) (425 SE2d 637) (1993) (taxpayer attack held invalid because the validation order specifically ''found that the contract was 'a legal, valid, binding and enforceable obligation' of the county and that the county could levy taxes to fulfill its obligations under

the contract"); *Miller v. Columbus*, 229 Ga. 234, 236 (2) (190 SE2d 535) (1972) (challenged "conveyance and lease . . . were adjudicated valid in the bond validation proceeding"); *Gibbs v. City of Social Circle*, 191 Ga. 422, 425 (2) (12 SE2d 335) (1940) ("action to enjoin the issuance and sale of [bond] certificates" not allowed where the "judgment validat[ed] and confirm[ed]" them). Requiring that agreements relating to bond transactions be specifically referenced in the pleadings and adjudicated in the validation proceedings protects the public's "constitutional [right] of due process [to receive] adequate notice of the subject of the hearing and [the] opportunity to be heard." *Ambac Indemnity Corp. v. Akridge*, supra at 774 (1). Therefore, the present challenge to the memoranda of agreement that set forth the tax assessment formula at issue will only constitute a prohibited collateral attack on a concluded bond validation proceeding if the memoranda were specifically adjudicated in the proceedings and held valid by the bond judgment. This may be the case in the present action, but Appellees must put forth evidence that the applicable bond validation orders did in fact expressly rule upon each memorandum of agreement. The requirement of this evidence is a further reason why the trial court should not have dismissed Sherman's petition. Moreover, even if Sherman is barred from challenging the tax agreements on concluded bond transactions, he also seeks an injunction to prohibit the use of the formula in future bond agreements.

Because Sherman has made material allegations which could be supported by admissible evidence on the issue of whether the valuation method used by Appellees fairly and justly approximates the fair market value of a bond transaction leasehold estate, the trial court erred in dismissing the petition for failure to state a claim upon which relief may be granted. Furthermore, because Appellees have failed to show that they are clearly entitled to judgment, the trial court erred in granting the motion for judgment on the pleadings.

*Judgment reversed. All the Justices concur, except Hunstein, C. J., Benham and Thompson, JJ., who dissent.*


BENHAM, Justice, dissenting.

Appellant John Sherman sought a writ of mandamus and injunctive relief against the members of the Fulton County Board of Assessors ("the Board") and the county's chief appraiser to compel them to stop what he asserts are illegal tax abatements and preferential tax assessments given in 2006-2009 to several real estate developments that were the subject of bonds issued by the Fulton County Development Authority and validated by the superior court. Mr. Sherman asserts that the Board is not fulfilling its statutory

duty under OCGA § 48-5-263 (b) to make appraisals of fair market value and comply with rules and regulations established by the tax commissioner for staff duties, and contends that the purported illegal activity is facilitated by the Board's use of a 50% "ramp-up" formula to value, for ad valorem tax purposes, the leasehold interest held by a real estate developer, the value of which interest has the potential to increase annually as the developer buys back the leased property from the local development authority. See *DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co.*, 248 Ga. 277 (282 SE2d 880) (1981). Acknowledging that OCGA § 36-80-16.1 (e) authorizes the use of the valuation method employed by the Board, Mr. Sherman also contended the statute is unconstitutional. The trial court dismissed Mr. Sherman's petition and granted judgment on the pleadings to the Board and the chief appraiser. Because I cannot agree with the majority's decision to reverse the judgment entered by the trial court, I respectfully dissent.

In his petition, Mr. Sherman sought to have the court order the Board to determine the 2009 fair market value of all existing bond transaction leaseholds and reassess them for prior years, and to cease use of the 50% valuation formula. In so doing, Mr. Sherman's petition takes issue with and seeks judicial reformation of the memoranda of agreement executed years ago in conjunction with each bond transaction by the real estate developer, the Fulton County Development Authority and the Board. Each of those trans-actions has been the subject of a bond validation proceeding which resulted in the issuance of a judgment of validation. I believe the trial court correctly dismissed Mr. Sherman's petition because Mr. Sher-man may not collaterally attack the judgment of validation that preceded the issuance of bonds for these projects.

> [E]ven if the judgment of validation is unconstitutional, arguably void, or obtained by fraud, accident, or mistake, it cannot be collaterally attacked . . . [t]hat judgment is con-clusive as to . . . all other questions which could and should have been asserted and adjudicated during the bond valida-tion proceedings.

*Quarterman v. Douglas County Bd. of Commrs.*, 278 Ga. 363, 365 (602 SE2d 651) (2004). See also *Charlton Dev. Auth. v. Charlton County*, 253 Ga. 208 (317 SE2d 204) (1984) (conclusiveness of validation proceedings places agreements referred to in the valida-tion judgment beyond challenge); *Miller v. Columbus, Georgia*, 229 Ga. 234 (190 SE2d 535) (1972) (following the conclusive adjudication of a bond validation proceeding, citizen/taxpayers could not maintain

an action attacking the conveyance and lease that were adjudicated valid in the bond validation proceeding). The Georgia Constitution requires that there be "incontestable and conclusive" validation of revenue bonds (1983 Ga. Const., Art. IX, Sec. VI, Par. IV), and OCGA § 36-82-78, the legislative implementation of the constitutional requirement, "prevents any collateral attack by the county, county residents, or taxpayers who had proper notice of the validation proceedings but chose not to intervene." *Ambac Indem. Corp. v. Akridge*, 262 Ga. 773, 774 (425 SE2d 637) (1993).

> The validation scheme provides an easy remedy for every taxpayer, whereby he may have his day in court, without the hazard and risk of seeking the aid of an equity court by injunction. . . . It provides a speedy and less expensive remedy for the taxpayer. There is no reason, in logic or in law, why the taxpayer should be permitted to decline to enter his appearance and objections in the validation proceeding, allow the decree there to be entered, and then make a formal attack which might have been made in that proceeding. . . .

*Gibbs v. City of Social Circle*, 191 Ga. 422, 426 (12 SE2d 335) (1940), quoting *Love v. Yazoo City*, 162 Miss. 65 (138 So. 600, 603) (1932). The preclusion of collateral attacks on matters that could have been raised in the bond validation proceeding

> is necessary to protect the ability of governmental bodies to obtain long-term financing in the bond market. Potential purchasers would be reluctant to invest in the state's bonds without the assurance that the revenue bonds and their security are not subject to collateral attacks after a court with proper jurisdiction has entered a final validation order. Any perceived risk in the revenue bonds as an investment would impede the ability of state and local governments to finance needed public improvement projects.

*Ambac Indem. Corp. v. Akridge*, supra, 262 Ga. at 775. The trial court was correct when it dismissed Mr. Sherman's petition and granted judgment on the pleadings to the Board and chief appraiser. Because the majority authorizes Mr. Sherman to mount a collateral attack on concluded bond validation proceedings that the Georgia Constitution, Georgia statutes, and Georgia jurisprudence prohibit, I respectfully dissent, and I am authorized to state that Chief Justice Hunstein and Justice Thompson join this dissent.

DECIDED NOVEMBER 1, 2010.

*John F. Woodham*, for appellants.

*Ichter Thomas, Cary Ichter, Patricia A. Roy, S. Renee Huskey, Cheryl M. A. Ringer, Jerolyn W. Ferrari, Robert D. Ware*, for appellees.

*Schiff Hardin, Robert D. Feagin, Han C. Choi, Sandra Z. Zayac, Lewis C. Horne, Jr., Thurbert E. Baker, Attorney General, R. O. Lerer, Deputy Attorney General, Denise E. Whiting-Pack, George S. Zier, Senior Assistant Attorneys General*, amici curiae.