**THIRD DIVISION
MIKELL, P. J.,
ELLINGTON, C. J., AND MILLER, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**July 5, 2012**

# In the Court of Appeals of Georgia

A12A0587. SHERMAN v. DEVELOPMENT AUTHORITY OF
    FULTON COUNTY et al.

MIKELL, Presiding Judge.

John S. Sherman appeals from a Fulton County Superior Court judgment that validated and confirmed certain revenue bonds and bond security. For the reasons the follow, we vacate the judgment and remand the case.

In accordance with the Revenue Bond law,[1] the State of Georgia initiated a bond validation proceeding in July 2011 by filing a "Petition and Complaint for Bond Validation," naming as defendants the Development Authority of Fulton County ("DAFC") and Lowe's Home Centers, Inc. ("Lowe's"). The pleading sought a judgment confirming and validating DAFC's issuance of proposed taxable revenue

---

[1] OCGA § 36-82-60, et seq.

bonds and related security as required by the Development Authorities Law.[2] The bonds were intended to finance the acquisition, renovation, and equipping of a warehouse distribution center in Fulton County (the "Project") that would be developed by Lowe's Home Centers, Inc. DAFC and Lowe's filed acknowledgments of service and answers.

The petition sought to create a bond transaction leasehold estate,[3] where in consideration for the issuance of the bonds, Lowe's agreed to transfer fee simple title in the Project to DAFC, and DAFC and Lowe's agreed to execute a lease agreement under which Lowe's would have the right to possession of the Project for a term of

---

[2] OCGA § 36-62-1, et seq.

[3] "A bond transaction leasehold estate is created when a local development authority, in accordance with its redevelopment powers, enters into a bond transaction agreement with a private developer of certain real property. The local development authority issues revenue bonds under a financing program to the developer, who conveys to the authority fee simply title to the property. The development authority and the developer then enter into a multi-year lease arrangement whereby the authority, as owner, leases the property to the developer. The resulting lease payments are then used by the local development authority to make the principal and interest payments on the revenue bonds. The terms of the agreement allow the developer to repurchase the fee simple estate for a nominal amount once the revenue bonds are paid down or retired." *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 89 (701 SE2d 472) (2010) ("*Sherman I*").

ten years. At the conclusion of the lease term, Lowe's would have a right to acquire the Project for nominal consideration.

In connection with the transaction, the Fulton County Board of Tax Assessors (the "Board"), DAFC, and Lowe's executed a Memorandum of Agreement ("Memorandum") establishing the valuation methodology the Board was to use in assessing ad valorem taxes on the leasehold estate.[4] Because the transaction gives Lowe's the right to acquire a fee simple interest in the Project for a nominal amount after the expiration of the ten-year lease period, DAFC's appraisal expert, Henry Wise, testified at the validation hearing that the real value of Lowe's leasehold interest is in that "reversionary interest." Accordingly, the Memorandum dictates that the Board will determine the fee simple market value of the Project utilizing the income approach, and then will determine the value of Lowe's leasehold interest by utilizing a "ramp-up schedule." The "ramp-up schedule" assumes that the value of the leasehold interest in the first year of the lease is 50 percent of the fee simple market

---

[4] While DAFC is exempt under OCGA § 36-62-3, a business which takes a leasehold from the authority is subject to ad valorem taxation on the fair market value of the possessory interest held. See *DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*, 248 Ga. 277, 279 (2) (282 SE2d 880) (1981).

value, and that value increases by 5 percent per year as the ten-year term progresses, moving closer to the benefit of the reversionary interest.

Sherman, as a resident of Fulton County, intervened in the proceedings and filed a pleading captioned "Objections to Bond Validation, Denial of Bond Validation Petition Allegations and Plea in Abatement."[5] Sherman's objection listed numerous grounds for denying the state's petition, and requested that the trial court provide an order setting forth findings of fact and conclusions of law pursuant to OCGA § 9-11-52 (a).

The bond validation proceeding was heard by the trial court, but counsel for Sherman did not appear and provide any argument. After a hearing, the trial court issued an order validating and confirming the bonds and bond security (the "Validation Order").

---

[5] OCGA § 36-82-77 (a) ("Any citizen of this state who is a resident of the governmental body which desires to issue such bonds may become a party to the proceedings at or before the time set for the hearing.") See *Sherman v. Dev. Auth. of Fulton County,* 314 Ga. App. 237, n.3 (723 SE2d 528) (2012) (*"Sherman II"*). The parties have made no argument that Sherman was not entitled to participate in the proceeding as an intervenor.

The parties agree that the facts in this case are not in dispute. Accordingly, "this Court conducts a de novo review of the record in determining whether the trial court committed plain legal error."[6]

1. Sherman first contends that the Validation Order is "void on its face," arguing that the trial court did not have personal jurisdiction over Lowe's because its acknowledgment of service and answer were signed by Gary E. Wyatt, the Senior Vice President of Lowe's, rather than a Georgia licensed attorney, as required by law.[7] Sherman did not raise this argument in the trial court below. As a general rule, we will not consider issues raised for the first time on appeal.[8] Citing OCGA § 9-12-16, Sherman argues that an exception to this rule applies because the trial court

---

[6] (Punctuation and footnote omitted.) *Greene County Bd. of Commrs. v. Higdon*, 277 Ga. App. 350 (626 SE2d 541) (2006).

[7] See *Waller v. Rymer*, 293 Ga. App. 833, 835, n. 3 (668 SE2d 470) (2008) (corporate party cannot appear pro se, but must be represented by legal counsel). Accord *Eckles v. Atlanta Technology Group*, 267 Ga. 801, 805 (2) (485 SE2d 22) (1997) ("Having accepted the benefits of incorporation, a corporation must also accept the burdens, including the need to hire counsel to sue or defend in court") (citation and punctuation omitted).

[8] *Safe Shield Workwear, LLC v. Shubee, Inc.*, 296 Ga. App. 498, 500-501 (2) (675 SE2d 249) (2009) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court. . . . Therefore, absent special circumstances, an appellate court need not consider arguments raised for the first time on appeal") (citation and footnote omitted).

lacked personal jurisdiction over Lowe's due to a faulty acknowledgment of service. OCGA § 9-12-16 provides that "[t]he judgment of a court having no jurisdiction of the person or subject matter . . . is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it." Pretermitting whether Lowe's executed a valid acknowledgment of service, we find that Lowe's waived any possible objections to personal jurisdiction it might have had by appearing and filing a pleading on the merits of the case.[9] Because Lowe's raised no objection to personal jurisdiction of the trial court in this matter, we find that the trial court had personal jurisdiction over the corporation and accordingly, Sherman's enumeration is without merit. Further, we cannot consider Sherman's enumeration of error in regards to Lowe's answer for the first time on appeal because it does not deal with issues of personal jurisdiction.

2. The Validation Order held that the parties had the authority to enter into the Memorandum and held that the Memorandum was valid and enforceable. Sherman

---

[9] See *Regency Mall Assocs. v. G. W.'s Restaurant*, 213 Ga. App. 225, 225 (444 SE2d 572) (1994) (personal jurisdiction may be waived); OCGA § 9-11-12 (h) (1); *Merry v. Robinson*, 313 Ga. App. 321, 322 (1) (721 SE2d 567) (2011) ("When a defendant appears and wishes to contend that service of process is insufficient and that, as a result, the court lacks jurisdiction of his person, he must raise the issue in his first responsive pleading or motion, and if he does not, he waives it") (citation omitted).

6

contends that the trial court was without jurisdiction to rule upon the Memorandum's validity, arguing that pursuant to the statutes constituting the Revenue Bond Law,[10] a bond validation order may address only the validity of the bonds and the security for the payment of the bonds. We disagree.

The bonds at issue in at this case are not issued under the Revenue Bond Law,[11] as Sherman contends. Rather, they are issued under the Development Authorities Law (the "Act").[12] Bonds issued under the Act are required to undergo the validation process set forth in the validation provisions set forth in the Revenue Bond Law.[13] These validation procedures dictate, among other things, how the validation hearing is to be noticed[14] and tried and direct that the "judge of the superior court shall proceed to hear and determine all questions of law and of fact in the case and shall

---

[10] OCGA § 36-82-60, et seq.

[11] Id.; The Revenue Bond Law governs the issuance of bonds by a governmental body, such as a school district, county, or municipal corporation to finance government projects. OCGA § 36-82-61 (2).

[12] OCGA § 36-62-1 et seq.; The Act governs bonds issued by developmental authorities for the purpose of promoting economic development of the municipality. OCGA § 36-62-4. The projects developed pursuant to the Act must be leased to, sold to, or managed by a private entity. OCGA § 36-62-7.

[13] OCGA § 36-62-8 (g).

[14] OCGA § 36-62-74.

7

render judgment thereof."[15] Unlike bonds issued under the Revenue Bond Law, bonds issued under the Act must be payable solely from privately paid proceeds pledged to repay the bonds, including rental or sale proceeds.[16] Accordingly, in a transaction such as this one, in which the bonds will be paid through lease proceeds, all agreements relating to the lease are properly within the court's jurisdiction. Because the Memorandum is referenced by the lease and dictates the methodology to be used to value Lowe's leasehold estate for ad valorem tax purposes, which is necessary "to provide [Lowe's] with sufficient information and certainty upon which it can base its decision" to enter into the lease that secured the bond transaction, it constitutes an integral part of the lease agreement and was properly before the trial court.[17]

3. Sherman next argues that the trial court erred in adjudicating the validity of the Memorandum because the Board was a party to the Memoradum, and thus it was an indispensable party to the litigation under OCGA § 9-11-19 (a). We disagree.

---

[15] OCGA § 36-82-77 (a).

[16] OCGA § 36-62-7.

[17] See *Sherman I*, supra at 95. ("Requiring that agreements relating to bond transactions be specifically referenced in the pleadings and adjudicated in the validation proceedings protects the public's constitutional right of due process to receive adequate notice of the subject of the hearing and the opportunity to be heard") (citation and punctuation omitted).

8

OCGA § 9-11-19 (a) provides that "[a] person who is subject to service of process shall be joined as a party to the action if . . . [i]n his absence complete relief cannot be afforded among those who are already parties; or [h]e claims an interest relating to the subject of the action." Stated differently, "if there are no compelling reasons for joining third parties, then they are not indispensable, and it is not necessary to join them for a just adjudication of the action between the original parties."[18] Sherman has not made this showing.

The Memorandum is clear that the Board was aware of the bond transaction and that the Memorandum was to be submitted to the court for validation, and yet the Board did not seek to intervene. The Board did not claim an interest in the action and is not so situated that the disposition of the proceeding, in its absence, may impair or impede the Board's ability to protect its interest or leave any of the other parties subject to substantial risk of incurring multiple or inconsistent obligations.[19] If the trial court had determined that the valuation methodology set forth in the Memorandum was not legally supportable, the court would not have validated the

---

[18] (Punctuation and footnote omitted.) *Merritt v. Marlin Outdoor Advertising, Ltd.*, 298 Ga. App. 87, 93 (4) (679 SE2d 97) (2009).

[19] See OCGA § 9-11-19 (a) (1), (2).

9

Memorandum and the Board would not be obliged to apply the methodology. Further, Sherman makes no argument that he will be deprived of relief as a consequence of the Board's absence from the bond validation proceeding.

Further, we cannot consider Sherman's contention that the trial court was without jurisdiction to pass judgment on the valuation methodology because he did not raise the argument before the trial court. As stated above, we will not consider issues raised for the first time on appeal.[20]

4. In his sixth enumeration of error, Sherman challenges the trial court's failure to present adequate findings of fact and conclusions of law with respect to several grounds he asserted.[21]

Under OCGA § 9-11-52 (a), a trial court presiding over a bench trial "shall upon request of any party prior to such ruling, find the facts specially and shall state separately its conclusions of law." These findings of fact and conclusions of law are

---

[20] *Safe Shield Workwear*, supra at 500-501 (2).

[21] See *Grantham v. Grantham*, 269 Ga. 413, 414 (1) (499 SE2d 67) (1999) (noting that "findings of fact and conclusions of law enable the parties to specify the errors the trial court purportedly made, and enable the appellate court to review the judgment adequately and promptly") (citation omitted).

"mandatory, and a dry recitation that certain legal requirements have been met is insufficient to satisfy the requirements of the law."[22]

In his objection, Sherman filed a request for a detailed order pursuant to OCGA § 9-11-52 (a). However, in the Validation Order, the trial court states that "the parties to this proceeding have duly and lawfully waived the requirement that separate findings of fact and conclusions of law be entered pursuant to OCGA § 9-11-52." Although the trial court prepared an eight-page order stating findings of fact and conclusions of law regarding the validity of the bonds and bond security, we find that it did not adequately address Sherman's fourth and fifth enumerations, as we will discuss below.

(a) In his fourth enumeration, Sherman asserts that the trial court erred in adjudicating the validity of the "ramp-up" methodology for determining the fair market value of the leasehold estate because it did not comply with *Sherman I*[23] or *DeKalb County Board of Tax Assessors v. W. C. Harris*.[24] In his request for an order

---

[22] (Citation omitted.) *C & H Couriers, Inc. v. American Mut. Ins. Co.*, 166 Ga. App. 853 (1) (305 SE2d 500) (1983).

[23] Supra.

[24] Supra.

pursuant to OCGA § 9-11-52 (a), Sherman specifically requested "factual findings regarding the evidence presented regarding the valuation of the proposed leasehold estate according to the *Harris* factors, as required under *Sherman [I]*."

In *Sherman I*,[25] Sherman brought an action for declaratory judgment and injunction against the Board and DAFC based on the theory that the "ramp-up" methodology for valuing the leasehold estate, similar to the one at issue in the present case, did not provide the true market value, as required by law.[26] Our Supreme Court reversed the trial court's grant of appellees' motions for judgment on the pleadings and to dismiss the case, finding that appellees "failed to show that they are clearly entitled to judgment [on the pleadings]" and that the grant of the motion to dismiss was improper because Sherman had made "material allegations which could be supported by admissible evidence"[27] on whether the "ramp-up" methodology for determining the fair market value of the leasehold estate was arbitrary and unreasonable.[28] To find that the valuation methodology applied by the local county

[25] Supra.

[26] Id. at 89.

[27] Id. at 95.

[28] Id. at 93.

12

board of tax assessors to a bond transaction leasehold estate was not "arbitrary or unreasonable[,]" our Supreme Court applied factors set forth in *Harris*,[29] and indicated that it required evidence that the method "followed an authorized income appraisal approach [and] that [it] took into account the fair market value of similarly leased property and was based upon prevailing rents in the area."[30] This is because "the fair market value of a leasehold interest must necessarily vary in accordance with the terms and conditions of each agreement as well as the nature and location of the property involved."[31] Most importantly, the *Sherman I* court noted that "a valuation of the fee simple estate is just the first step. Appellees will need to offer evidence as to how their ["ramp-up"] method applied to the leasehold estate incorporates the requisite factors."[32]

In the case sub judice, the Validation Order recites that its findings are based upon an inspection of the record and hearing of the evidence; that "the [Memorandum] sets forth a reasonable and non-arbitrary method of arriving at the fair

---

[29] Supra at 281 (3).

[30] *Sherman I,* supra at 92, citing *Harris*, supra.

[31] Id., citing *Harris*, supra.

[32] Id. at 93.

market value of the property that is the subject of the bond transaction for purposes of tax assessment and represents a legally valid valuation methodology for utilization by [the Board]" and that Sherman's objections are "without merit and the valuation methodology employed in the Memorandum of Agreement complies with both *[Sherman I]* and *[Harris]*.

However, the Validation Order does not specifically set forth the facts or process by which the trial court reached these conclusions. Under OCGA § 9-11-52 (a), the trial judge is to ascertain the facts and to state not only the end result of that inquiry but the process by which it was reached.[33] This is especially true in this case because Sherman requested specific findings of fact and conclusions of law with regard to the trial court's application of the *Sherman I* factors. Additionally, "'[f]indings of fact' are insufficient when they merely state the court's answers to the material issues in the case, and when they contain no facts based on the evidence supporting those answers."[34] Although the Validation Order states that the valuation methodology set forth in the Memorandum complies with *Sherman I* and *Harris*, it does not explain the facts or analysis it used to reach this conclusion. Without such

---

[33] (Citation and punctuation omitted). *C & H Couriers, Inc*, supra at 853 (1).

[34] (Citation omitted.) Id.

evidence, we are unable to determine, pursuant to *Sherman I* and *Harris*, that the valuation method used by appellees is not arbitrary and unreasonable.[35]

(b) In his fifth enumeration of error, Sherman argues that the trial court erred in concluding that the bond transaction structure did not violate OCGA § 36-62-8 (b), the statutory provision relating to the disposition of bond proceeds. OCGA § 36-62-8 (b) requires the proceeds derived from the sale of bonds to be used "for the ultimate purpose of paying . . . all or part of the cost of any project." Because, in this case, Lowe's purchased its own bonds and thus no funds immediately changed hands, Sherman asserts that the bond transaction is a "sham."

In its Validation Order, the trial court found that the "[b]onds . . . will constitute limited obligations of the Issuer and will be payable solely from the revenues to be derived under the Lease Agreement;" and that the "[i]ssuer is taking all proper and necessary steps to issue the Bonds and to use the proceeds for the purposes stated." However, the Validation Order does not specifically address

---

[35] See *Sherman II*, supra. In *Sherman II*, Sherman intervened in a similar bond validation proceeding and objected to the "ramp-up" valuation methodology. Because the trial court's validation order did not set forth findings of fact and conclusions of law with regard to Sherman's objections, this Court vacated the validation order and remanded it so that the superior court could "enter a judgment setting forth requisite findings of fact and conclusions of law that will allow meaningful review of the trial court's rejection of Sherman's arguments") (footnote omitted).

Sherman's objection that this transaction does not comply with OCGA § 36-62-8 (b) or the process by which it came to its conclusion that the proposed transaction followed "all proper and necessary steps." Because the Validation Order contains "merely a dry recitation that certain legal requirements have been met [regarding Sherman's fifth enumeration,] adequate appellate review of the trial judge's decision making process is effectively prevented."[36]

Based upon the above, this judgment is vacated and the case remanded "so that the superior court may enter a judgment setting forth requisite findings of fact and conclusions of law that will allow meaningful appellate review of the trial court's rejection of Sherman's arguments."[37]

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ellington, C. J., and Miller J., concur.*

---

[36] *Pruitt v. First Nat. Bank of Harbersham County*, 142 Ga. App. 100 (1) (235 SE2d 617) (1977) (applying previous version of OCGA § 9-11-52 (a)).

[37] (Footnote omitted.) *Sherman II*, supra at 238-239.