**WHOLE COURT**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 7, 2013**

# In the Court of Appeals of Georgia

A12A2112. SHERMAN v. DEVELOPMENT AUTHORITY OF
FULTON COUNTY, et al.

BRANCH, Judge.

This appeal arises from a revenue bond validation proceeding in which the State of Georgia petitioned the Fulton County Superior Court for a judgment approving the issuance of certain taxable revenue bonds by the Development Authority of Fulton County ("DAFC") and validating both the bonds and related bond security documents. John Sherman, a resident of Fulton County, attempted to make himself a party to the proceeding by filing a document entitled "Notice of Becoming Party to Bond Validation Petition Proceeding," and shortly thereafter he filed objections to the validation petition. DAFC filed a motion to strike Sherman's pleadings on the grounds that he had failed to follow the statutory procedure for intervening in a civil action.

The trial court granted that motion and also entered an order validating the bond issuance. Sherman now appeals from both the order striking his pleadings and the order validating the issuance of the bonds. With respect to the striking of his pleadings, Sherman argues that the court below erred in finding that Georgia's Civil Practice Act ("CPA") applies to bond validation proceedings and thereby dictates the procedure by which a private citizen may become a party to such an action. Sherman also challenges the bond validation order on a number of grounds.

We agree with the trial court that the intervention procedure contained in the CPA applies to bond validation proceedings. Given Sherman's failure to follow that procedure, therefore, we affirm the order of the trial court striking his pleadings. Moreover, because he was not properly a party to the proceedings below, Sherman has no standing to appeal the bond validation order. Accordingly, we decline to address Sherman's attempted appeal of that order.

The facts in this case are undisputed and we therefore review the record de novo to determine whether the trial court committed plain legal error. *Sherman v. Dev. Auth. of Fulton County*, 317 Ga. App. 345, 346 (730 SE2d 113) (2012) ("*Sherman II*").

The record shows that the purpose of the revenue bonds at issue is to finance a data center and related facilities in Fulton County ("the Project") that, once completed, will be leased to T5@Atlanta, LLC ("T5"). Thus, among other things, the petition sought to create a bond transaction leasehold estate[1] where, in consideration for the issuance of the bonds, T5 agreed to transfer fee simple title in the Project to DAFC, and DAFC and T5 agreed to execute a lease agreement under which T5 would have the right to possession of the Project for a term of ten years. At the conclusion of the lease term, T5 would have the right to acquire the Project for nominal consideration.

As part of the transaction, the Fulton County Board of Tax Assessors (the "Board"), DAFC, and T5 proposed to enter into a Memorandum of Agreement (the

---

[1] "A bond transaction leasehold estate is created when a local development authority, in accordance with its redevelopment powers, enters into a bond transaction agreement with a private developer of certain real property. The local development authority issues revenue bonds under a financing program to the developer, who conveys to the authority fee simple title to the property. The development authority and the developer then enter into a multi-year lease arrangement whereby the authority, as owner, leases the property to the developer. The resulting lease payments are used by the local development authority to make the principal and interest payments on the revenue bonds. The terms of the agreement allow the developer to repurchase the fee simple estate for a nominal amount once the revenue bonds are paid down or retired." *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 89 (701 SE2d 472) (2010) ("*Sherman I*").

"Memorandum") which establishes the valuation methodology the Board is to use in assessing ad valorem taxes on the leasehold estate.[2]

The State's bond validation petition and complaint were filed on December 7, 2011, and a hearing on the matter was scheduled for December 21, 2011. On December 19, 2011, Sherman filed, through counsel, his notice of intent to make himself a party to the proceeding. On December 21, the day of the scheduled hearing,[3] Sherman filed a document captioned "Objections to Bond Validation Petition," wherein he requested, inter alia, that the trial court provide an order setting forth findings of fact and conclusions of law pursuant to OCGA § 9–11–52 (a),[4] "including

---

[2] While DAFC is exempt from such taxes under OCGA § 36-62-3, a business which takes a leasehold from the authority is subject to ad valorem taxation on the fair market value of the possessory interest held. See *DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*, 248 Ga. 277, 279 (2) (282 SE2d 880) (1981). And as DAFC explains in its brief, "to provide predictability to the [business] regarding the tax consequences of the bond transaction, the development authority and the [business] typically join with the local tax assessor to memorialize an agreement setting forth the method by which the leasehold estate will be valued for tax purposes over the term of the lease."

[3] No hearing transcript appears in the record, but the trial court's validation order references the hearing and the parties do not dispute that a hearing occurred. Sherman concedes that at the hearing, he offered no evidence, either personally or through counsel.

[4] OCGA § 9-11-52 (a) states, in relevant part, that "in all nonjury trials in courts of record, the court shall upon request of any party made prior to such ruling, find the facts specially and shall state separately its conclusions of law."

4

without limitation, specific factual findings regarding the evidence presented regarding the valuation of the proposed leasehold estate . . . according to the *Harris* factors, as required under *Sherman* [*I*], as well as conclusions of law regarding the constitutional issues raised by Intervenor Sherman."[5] Also on December 21, DAFC filed its motion to strike Sherman's pleadings on the grounds that Sherman had failed to follow the procedure for intervening in a civil action set forth in OCGA § 9-11-24, because he did not file a motion to intervene.[6] The court below entered the order granting DAFC's motion on the same day it was filed. Also on that day, the court entered an order validating the bond issuance. This appeal followed.

---

[5] Under *Harris*, to prove that it acted properly in valuing a leasehold estate such as the one at issue, a taxing authority must demonstrate that the valuation method used was neither arbitrary nor unreasonable. It may make such a showing through evidence establishing that its valuation method followed an authorized appraisal approach – i.e., an approach that takes into account factors such as "the terms and conditions" of the lease, "the nature and location of the property involved," the "fair market value of similarly leased property," and the "prevailing rents in the area." 248 Ga. at 281 (3). See also *Sherman I*, 288 Ga. at 92.

[6] Under OCGA § 9-11-24, a person seeking to intervene, including those intervening under a statute granting them such a right, "shall serve a motion to intervene upon the parties as provided in Code Section 9-11-5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." OCGA § 9-11-24 (c).

5

1. Sherman contends that the court below erred in finding that, because he did not follow the intervention procedure set forth in OCGA § 9-11-24, he was not a proper party to these proceedings. We find no error.

A bond validation proceeding such as the one at issue is governed by Georgia's Revenue Bond Law, OCGA § 36-82-60 et seq, and that law allows a private citizen to become a party to such proceedings. Specifically, OCGA § 36-82-77 (a) provides, in relevant part:

> Any citizen of this state who is a resident of the governmental body which desires to issue such bonds may become a party to the proceedings at or before the time set for the [bond confirmation and validation] hearing and any party thereto who is dissatisfied with the judgment of the court confirming and validating the issuance of the bonds or refusing to confirm and validate the issuance of the bonds and the security therefor may appeal from the judgment under the procedure provided by law in cases of injunction. Only a party to the proceedings at the time the judgment appealed from is rendered may appeal from such judgment.

Sherman argues that because this statutory provision neither uses the word "intervene" nor explicitly states that the Civil Practice Act applies to a citizen seeking to become a party to a bond validation proceeding, such a citizen is not required to follow the intervention procedure set forth in OCGA § 9-11-24. Thus, he concludes

6

that OCGA § 36-82-77 (a) allows him to become a party to the bond validation proceeding simply by filing a notice of his intent to do so. In support of his argument, Sherman relies on this Court's decision in *Hay v. Dev. Auth. of Walton County*, 239 Ga. App. 803, 804 (521 SE2d 912) (1999). In *Hay*, we considered a different provision of the Revenue Bond Law, OCGA § 36-82-23,[7] which contains language virtually identical to that found in OCGA § 36-82-77 (a). In interpreting that language, this Court held that a citizen of a county seeking to become a party to a bond validation proceeding was not required to follow the procedure for intervention set forth in OCGA § 9-11-24, reasoning:

> the statute does not contain the word "intervene," nor does it refer to the procedural requirements of OCGA § 9-11-24. If the legislature, in enacting OCGA § 36-82-23, intended the strict intervention procedures of OCGA § 9-11-24 to be used, it would have referenced the statute or at least used the term "intervene" or "intervention" when referring to the objecting residents. Cf. *ADC Constr. Co. v. Hall*, 191 Ga. App. 33, 34 (1) (381 SE2d 76) (1989).

*Hay*, 239 Ga. App. at 804.

---

[7] While OCGA § 36-82-77 deals exclusively with the validation procedure for revenue bonds, OCGA § 36-82-23 deals with the validation procedure for other types of bonds a municipality or other local government entity might seek to issue.

7

On appeal, Sherman argues that the foregoing rationale should apply to revenue bond validation proceedings initiated under OCGA § 36-82-77 (a). For reasons explained below, however, we find that the *Hay* Court erred in holding that OCGA § 9-11-24 does not apply to bond validation proceedings.

In determining whether the intervention procedure set forth in the Civil Practice Act applies to bond validation proceedings, the *Hay* Court failed to address OCGA § 9-11-81, which provides that the CPA

> *shall* apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law; but, *in any event*, *the provisions of this chapter governing* the sufficiency of pleadings, defenses, amendments, counterclaims, cross-claims, third-party practice, joinder of parties and causes, making parties, discovery and depositions, interpleader, *intervention*, evidence, motions, summary judgment, relief from judgments, and the effect of judgments *shall apply to all such proceedings*.

OCGA § 9-11-81. (Emphasis supplied.)

The parties do not dispute that a bond validation proceeding, as a proceeding that is created by statute, constitutes a "special statutory proceeding" within the meaning of OCGA § 9-11-81. See also *Anderson v. Flake*, 267 Ga. 498, 500 (1) (480

8

SE2d 10) (1997) (the process for obtaining an extraordinary remedy, "which exists solely by virtue of statute[,]" is a special statutory proceeding to which the CPA applies); *Rojas v. State*, 269 Ga. 121, 122 (2) (498 SE2d 735) (1998) (a complaint for forfeiture of property filed pursuant to OCGA § 16-13-49 is a special statutory proceeding within the meaning of OCGA § 9-11-81); *Hardin Const. Group v. Fuller Enterprises*, 265 Ga. 770, 771 (462 SE2d 130) (1995) ("an arbitration award confirmation proceeding filed pursuant to the Georgia Arbitration Code . . . is a special statutory proceeding") (footnote omitted). Thus, "pursuant to the explicit statutory language of OCGA § 9-11-81 and [given] the absence of any provision to the contrary in the Georgia [Revenue Bond Act]," the provisions of the CPA addressing intervention apply to bond validation proceedings. *Hardin Const. Group*, 265 Ga. at 771. Our holding to the contrary, found in *Hay*, 239 Ga. App. at 804-805 is hereby overruled.

In reaching this conclusion, we note that the fact that the Revenue Bond Act fails to mention the word "intervention" or otherwise specify the procedure by which a citizen may make himself a party to a bond validation proceeding does not create a conflict between that statute and the Civil Practice Act. Rather, the statute's "silence" on this issue means that the Civil Practice Act applies. See *Anderson v. Flake*, 270 Ga.

9

141, 142 (1) (508 SE2d 650) (1998) (under OCGA § 9-11-81, the CPA applies to all statutory proceedings "[i]n the absence of an express provision in the [relevant] statute that conflicts with the CPA"); *General Acceptance Corp. v. Bishop*, 126 Ga. App. 421, 421-422 (1) (a) (190 SE2d 825) (1972) (the fact that the statute at issue does not provide for all the remedies allowed under the CPA does not mean that it conflicts with the Civil Practice Act, and the additional remedies allowed under the CPA must be allowed in the special statutory proceeding); *Phagan v. State*, 287 Ga. 856, 859 (700 SE2d 589) (2010); *Rojas*, 269 Ga. at 122-123 (2).

Accordingly, because Sherman failed to follow the statutory process for intervening in this action, the trial court acted properly in striking his pleadings.[8]

---

[8] Sherman's counsel asserted at oral argument that any decision that OCGA § 9-11-24 applied to bond validation proceedings should be applied prospectively only – i.e., that it should not be applied to Sherman in this case. We disagree. Here, DAFC's motion to strike Sherman's pleadings put him on notice of the possibility that he might not properly be a party to the proceedings below. At that point, had Sherman simply appeared and moved to intervene, the trial court would have been constrained to grant that motion. See OCGA § 36-82-77 (a) (granting citizens a statutory right to intervene anytime "at or before the time set for the [bond validation] hearing"; OCGA § 9-11-24 (a) (1) (a trial court must grant a timely motion to intervene based upon a statutory right of intervention). Despite this fact, however, Sherman declined to attend the bond validation hearing, where the motion to strike was heard and decided. Nor did Sherman take advantage of other procedural avenues available to him below, such as filing a motion for reconsideration of the order striking his pleadings in conjunction with a motion to intervene. Given these circumstances, we do not believe that Sherman has been caught unaware of the possibility that he might not be a proper party to this litigation.

2. Sherman also seeks to appeal the trial court's order validating the issuance of the bonds. Under OCGA § 36-82-77 (a), however, only one who is "a party to the proceedings at the time the judgment appealed from is rendered may appeal from such judgment." Sherman's failure to intervene means that he was not properly a party to the proceedings below, and therefore he has no standing to appeal the bond validation order. *Coffield v. Kuperman*, 269 Ga. App. 432, 434 (604 SE2d 288) (2004); *In the Interest of J. C. H.*, 224 Ga. App. 708, 710 (2) (482 SE2d 707) (1997). See also OCGA § 5-6-33 (a) (1)(only parties to the proceeding may appeal from the judgment, decision, or decree entered by the trial court). Accordingly, we decline to address Sherman's appeal of the validation order. See *In the Interest of J. C. H.*, 224 Ga. App. at 710 (2).

For the reasons set forth above, the order of the court below striking Sherman's pleadings for failure to follow the statutory intervention procedure is affirmed. Furthermore, given that Sherman lacks standing to challenge the trial court's order validating the issuance of the bonds, we also affirm that order.

*Judgment affirmed. Ellington, C. J., Barnes, P. J., Miller, P. J., Phipps, P. J., Doyle, P. J., Andrews, Dillard, McFadden, Boggs, Ray, McMillian, JJ., concur.*