**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 22, 2013**

# In the Court of Appeals of Georgia

A12A2111. SHERMAN v. DEVELOPMENT AUTHORITY OF
FULTON COUNTY, et al.

BRANCH, Judge.

This appeal arises from a bond validation proceeding in which the State of Georgia petitioned the Fulton County Superior Court for a judgment approving the issuance of certain taxable revenue bonds by the Development Authority of Fulton County ("DAFC") and validating the bonds and various bond security documents. See OCGA § 36-62-1 *et seq.* John S. Sherman, a taxpayer and citizen of Fulton County, appeals from the order of the trial court validating and confirming the bonds and bond security. For the reasons explained below, we vacate the order of the trial court and remand this case for further proceedings consistent with this opinion.

The record shows that the purpose of the bonds at issue is to finance the development of a manufacturing facility in Fulton County ("the Project") that, once completed, will be leased to Owens Corning Roofing and Asphalt, LLC ("Owens"). Thus, among other things, the petition sought to create a bond transaction leasehold estate[1] where, in consideration for the issuance of the bonds, Owens agreed to transfer fee simple title in the Project to DAFC, and DAFC and Owens agreed to execute a lease agreement under which Owens will have the right to possession of the Project for a term of ten years, excluding any construction or installation period. . At the conclusion of the lease term, Owens will have a right to acquire the Project for nominal consideration.

---

[1] "A bond transaction leasehold estate is created when a local development authority, in accordance with its redevelopment powers, enters into a bond transaction agreement with a private developer of certain real property. The local development authority issues revenue bonds under a financing program to the developer, who conveys to the authority fee simple title to the property. The development authority and the developer then enter into a multi-year lease arrangement whereby the authority, as owner, leases the property to the developer. The resulting lease payments are used by the local development authority to make the principal and interest payments on the revenue bonds. The terms of the agreement allow the developer to repurchase the fee simple estate for a nominal amount once the revenue bonds are paid down or retired." *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 89 (701 SE2d 472) (2010) ("*Sherman I*").

As part of the transaction, the Fulton County Board of Tax Assessors (the "Board"), DAFC, and Owens executed a Memorandum of Agreement (the "Memorandum") which establishes the valuation methodology the Board will employ in assessing ad valorem taxes on the leasehold estate.[2] Specifically, the Memorandum provides that the Board will determine the fee simple market value of the Project utilizing the income approach, and then will determine the value of Owens's leasehold interest by utilizing a "ramp-up schedule." The "ramp-up schedule" assumes that the value of the leasehold interest in the first year of the lease is 50 percent of the fee simple market value, and that value increases by 5 percent each year as the ten-year term progresses and as Owens moves closer to receiving the benefit of its reversionary interest in the Project.[3]

---

[2] While DAFC is exempt from such taxes under OCGA § 36-62-3, a business which takes a leasehold from the authority is subject to ad valorem taxation on the fair market value of the possessory interest held. See *DeKalb County Bd. of Tax Assessors v. W.C. Harris & Co.,* 248 Ga. 277, 279 (2) (282 SE2d 880) (1981).

[3] DAFC contends that because the transaction gives Owens the right to acquire a fee simple interest in the Project property for a nominal amount after the expiration of the ten-year lease period, the real value of Owens's leasehold interest is in its "reversionary interest." Thus, with each passing year, as Owens moves closer to acquiring the reversionary interest, the value of the leasehold interest increases.

The petition and complaint were filed on September 27, 2011, and a hearing or hearings on the matter occurred some time thereafter.[4] On October 10, 2011, Sherman filed a document captioned "Objections to Bond Validation Petition, Denial of Bond Validation Petition Allegations and Plea in Abatement" and on October 11 he filed his first amendment to this pleading.[5] In his pleadings Sherman requested, inter alia, that the trial court provide an order setting forth findings of fact and conclusions of law pursuant to OCGA § 9-11-52 (a)[6], "including without limitation, specific factual

---

[4] No hearing transcript or order setting a hearing appears in the record, but the trial court's validation order references "a hearing," and DAFC asserts that several hearings were held. Specifically, DAFC claims that Sherman offered no evidence at the "series of evidentiary hearings" held on the petition.

[5] Although as a private citizen Sherman was entitled to become a party to this proceeding (see OCGA § 36-82-77 (a)), the record before us does not show how Sherman was made a party. DAFC, however, has not raised the issue of Sherman's standing, and we therefore assume, for purposes of this appeal, that Sherman is properly before the Court. Compare *Sherman v. Development Authority of Fulton County, et al.*, ___ Ga. App. ___ (Case No. A12A2112, decided March 7, 2013).

[6] That code provision states, in relevant part, that "in all nonjury trials in courts of record, the court shall upon request of any party made prior to such ruling, find the facts specially and shall state separately its conclusions of law."

4

findings regarding the evidence presented regarding the valuation of the proposed

leasehold estate . . . according to the *Harris* factors, as required under *Sherman* [*I*]."[7]

---

[7] In *Sherman I,* Sherman brought an action for declaratory and injunctive relief against the Board and DAFC asserting that the "ramp-up" methodology for valuing a leasehold estate, similar to the one at issue, did not reflect the property's true market value, as required by law. 288 Ga. at 89. The trial court granted DAFC and the Board judgment on the pleadings and dismissed the case. Our Supreme Court reversed, finding, inter alia, that dismissal was improper because Sherman had made "material allegations which could be supported by admissible evidence" (id. at 95), including his allegation that the "ramp-up" methodology used to determine the fair market value of the leasehold estate was "arbitrary and unreasonable." Id. at 93. The Supreme Court also held that to determine whether a valuation methodology applied by a local county board of tax assessors to a bond transaction leasehold estate was "arbitrary or unreasonable[,]" a court must apply the factors set forth in *Harris*. Id. at 92. Under *Harris,* to prove that it acted properly in valuing a leasehold estate, a taxing authority must demonstrate that the valuation method used was neither arbitrary nor unreasonable. It may make such a showing through evidence establishing that its valuation method followed an authorized appraisal approach—i.e., an approach that takes into account factors such as "the terms and conditions" of the lease, "the nature and location of the property involved," the "fair market value of similarly leased property," and the "prevailing rents in the area." 248 Ga. at 281 (3).

Evidence that a local taxing authority had applied the *Harris* factors was necessary, according to the Supreme Court, because "the fair market value of a leasehold interest must necessarily vary in accordance with the terms and conditions of each agreement as well as the nature and location of the property involved." (Punctuation omitted.) 288 Ga. at 92, citing *Harris,* supra. The *Sherman I* court further noted that on remand of that case, "a valuation of the fee simple estate is just the first step. [DAFC and the Board] will need to offer evidence as to how their ['ramp-up'] method[,] [as] applied to the leasehold estate[,] incorporates the requisite factors." Id. at 93.

5

On March 8, 2012, the court below entered an order validating the bond issuance. Sherman now appeals from that order, asserting that the trial court erred by failing to set forth therein findings of fact or conclusions of law sufficient to support its ultimate holdings that (i) the method used by DAFC to value the leasehold estate was valid under the requirements of *Harris* and *Sherman I*; (ii) the structure of the bond transaction did not violate OCGA § 36-62-8;[8] (iii) the Memorandum was not ultra vires, in violation of OCGA § 36-30-3 (a);[9] and (iv) the structure of the bond transaction did not create an unconstitutional tax exemption.

Because the facts in this case are undisputed, we conduct a de novo review of the record to determine whether the trial court committed plain legal error. *Sherman v. Dev. Auth. of Fulton County*, 317 Ga. App. 345, 346 (730 SE2d 113) (2012) ("*Sherman II*").

---

[8] That statute provides, in relevant part, that "[t]he proceeds derived from the sale of all bonds and bond anticipation notes issued by an authority shall be held and used for the ultimate purpose of paying, directly or indirectly as permitted in this chapter, all or part of the cost of any project, including the cost of extending, financing, adding to, or improving the project, for the purpose of refunding any bond anticipation notes issued in accordance with this chapter or refunding any previously issued bonds of the authority." OCGA § 36-62-8 (b).

[9] "One council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government." OCGA § 36-30-3 (a).

1. We first address our holding in *Sherman II*, because we find that its analysis applies to the current case.

*Sherman II* arose out of a bond validation proceeding similar to the one at issue here.[10] As in this case, Sherman became a party to the proceeding and "requested that the trial court provide an order setting forth findings of fact and conclusions of law pursuant to OCGA § 9–11–52 (a)." 317 Ga. App. at 346. He also specifically requested that the court make "factual findings regarding the evidence presented regarding the valuation of the proposed leasehold estate according to the *Harris* factors, as required under *Sherman I.*" Id. at 350 (4) (a) (citation and punctuation omitted). In response to this request, the trial court issued an order containing findings of fact and conclusions of law, many of which are identical to those made here.[11] Our

_____

[10] Specifically, *Sherman II* involved bonds "intended to finance the acquisition, renovation, and equipping of a warehouse distribution center in Fulton County . . . that would be developed by Lowe's [Home Centers, Inc.]" 317 Ga. App. at 345.

[11] For example, the trial court's order at issue in *Sherman I* found that "the Memorandum sets forth a reasonable and non-arbitrary method of arriving at the fair market value of the property that is the subject of the bond transaction for purposes of tax assessment and represents a legally valid valuation methodology for utilization by the Board [of Assessors] and that . . . the valuation methodology employed in the Memorandum of Agreement complies with both *Sherman I* and *Harris*." 317 Ga. App. at 351 (4) (a) (punctuation omitted). Identical "findings of fact" were made by the trial court in this case. We more fully analyze the trial court's factual findings in this case below.

7

*Sherman II* opinion held that these conclusory findings, which did not set forth the facts or analysis on which the court based those conclusions, failed to comply with OCGA § 9-11-52 (a). Id. at 352 (4) (b). The order, therefore, "provided no basis for meaningful appellate review," and we concluded that "[b]ecause the [trial court's order] contains 'merely a dry recitation that certain legal requirements have been met . . . adequate appellate review of the trial judge's decision making process is effectively prevented.'" Id. Accordingly, remand was necessary to allow the superior court to "'enter a judgment setting forth requisite findings of fact and conclusions of law that will allow meaningful appellate review of the trial court's rejection of Sherman's arguments.'" Id. (footnote omitted).

We find the analysis of *Sherman II* controlling as to Sherman's claims of error in this case. As discussed more fully below, the trial court labeled some of its holdings as "findings of fact." Instead of being actual factual findings, however, these statements are summary conclusions that contain no hint about the evidence or analysis the court relied on to arrive at them. Similarly, the trial court's "conclusions of law" challenged by Sherman on this appeal cite no legal authority and contain no analysis that explains them. Accordingly, these findings of fact and conclusions of law fail to satisfy the requirements of OCGA § 9-11-52 (a). See *In the Interest of D. L. G.,*

8

212 Ga. App. 353 (1) (442 SE2d 11) (1994) (noting that OCGA § 9–11–52 (a) requires a trial judge to ascertain facts and to state not only the end result of that inquiry, but the process by which it was reached; holding that "a bare statement of what the court considered in reaching its conclusions is not a recitation of how those facts give support to . . . the [court's] conclusions") (citation and punctuation omitted); *Brant v. Bazemore*, 173 Ga. App. 294, 295 (1) (325 SE2d 905) (1985) (holding that an order which contains mere legal conclusions that are unsupported by specific findings of fact does not satisfy OCGA § 9-11-52 (a)). And in the absence of the facts and analysis necessary to explain the trial court's holdings, we are unable to conduct a meaningful review of those holdings. *Sherman II*, 317 Ga. App. at 352 (4) (b).

2. Sherman challenges the trial court's holding that the ramp-up valuation method set forth in the Memorandum, to be used in valuing the leasehold estate for ad valorem tax purposes, is valid and complies with the requirements of Georgia law as set forth in *Sherman I* and *Harris*. With respect to this holding, the trial court made the following "factual" findings: (i) the expert witness presented by DAFC was "qualified to testify as an expert on valuation of property and leasehold interests and forensic valuation analysis"; (ii) a second witness presented by DAFC established that "the [r]amp-[u]p method of establishing the fair market value, for ad valorem taxation

9

purposes, of a leasehold estate created by a lease that grants a reversionary interest to the lessee in ten (10) years would be an appropriate method regardless of whether a bond transaction is involved in the lease"; (iii) the Memorandum "sets forth a reasonable and non-arbitrary method of arriving at the fair market value" of the real property at issue "for purposes of tax assessment and represents a legally acceptable and valid valuation methodology for utilization by the [Fulton County Board of Assessors]"; and (iv) "the valuation methodology employed in the Memorandum . . . complies with both [*Sherman I*] and [*Harris*]."

For the reasons explained in *Sherman II* and discussed above, these findings of fact fail to meet the requirements of OCGA § 9-11-52 (a). *Sherman II*, 317 Ga. App. at 351 (a) (finding that the court's conclusion that the ramp-up method complied with *Sherman I* and *Harris* failed to satisfy OCGA § 9-11-52 (a), because it failed to "explain the facts or analysis [the lower court] used to reach this conclusion.") And without the required findings of fact and conclusions of law, "we are unable to determine, pursuant to *Sherman I* and *Harris,* that the valuation method used by appellees is not arbitrary and unreasonable." (Footnote omitted.) Id.

In support of the trial court's findings on this issue, DAFC argues that Sherman's failure to provide transcripts of the evidentiary hearings prevents him from challenging on appeal "factual findings" such as those referenced above. We disagree.

DAFC is correct that where a transcript of the evidence is necessary to decide an appellant's claims of error, "and the appellant omits it from the record or fails to submit a statutorily authorized substitute," we must presume that the evidence supported the judgment of the trial court. (Citation and footnote omitted.) *Jackman v. LaSalle Bank, N.A.*, 299 Ga. App. 894, 896 (1) (683 SE2d 925) (2009). Where a trial court fails to make the factual findings and conclusions of law required by OCGA § 9-11-52 (a), however, its order will be vacated and remanded, even in the absence of a transcript. See *L & L Elec. Serv. v. L.K. Comstock & Co.*, 168 Ga. App. 780, 781 (310 SE2d 557) (1983); *Tele-Spot of Atlanta v. Garden Cities Corp.*, 137 Ga. App. 238 (2) (223 SE2d 273) (1976). As a matter of logic, this same exception to the transcript requirement must apply where, as here, the trial court's factual findings are so conclusory in nature that they fail to meet the requirements of OCGA § 9-11-52 (a). See *Broussard v. Williams*, 164 Ga. App. 545 (298 SE2d 269) (1982) (vacating and remanding in the absence of a transcript, and noting that in making findings of fact and conclusions of law, "[t]he trial court is required to 'ascertain the facts and state

11

not only the end result of its inquiry but the process by which it was reached.'") (citations and punctuation omitted). Accordingly, the absence of a transcript does not prevent us from vacating the court's order and remanding the case for entry of an order setting forth both the facts on which it is basing its conclusions as well as the analysis by which it arrived at the same.

3. In his pleadings below, Sherman asserted that the structure of the bond transaction at issue violates OCGA § 36-62-8 (b) because, under the terms of that transaction, Owens will purchase its own bonds and thus no funds will actually change hands. The trial court's order, however, fails entirely to address this claim. For that reason, we must vacate the order and remand the case to allow the trial court to consider this argument and make the requisite findings of fact and conclusions of law with respect thereto. See *Sherman II*, 317 Ga. App. at 352 (4) (b) (holding that the trial court's failure to specifically address Sherman's claim that the structure of the bond transaction at issue violated OCGA § 36-62-8 (b), together with its failure to offer any analysis explaining how "it came to its conclusion that the proposed transaction" complied with the statute, necessitated vacation of the order and remand of the case).

4. In its conclusions of law, the trial court held that, "[t]he execution of the Memorandum . . . by the Board is not an *ultra vires* act that is prohibited by OCGA

12

§ 36-30-3 (a)." Sherman challenges this holding on appeal. DAFC, however, contends that Sherman cannot challenge this ruling, because he failed to raise the issue of ultra vires conduct in the court below. We disagree.

The law in Georgia is that because the appellate courts are for correction of errors of law, "[i]ssues which have not been *ruled on* by the trial court may not be raised on appeal." (Citation omitted; emphasis supplied.) *Ga. Dept. of Natural Resources v. Coweta County*, 261 Ga. 484, 485 (405 SE2d 470) (1991). See also *Hart v. Groves*, 311 Ga. App. 587, 588 (1) (716 SE2d 631) (2011) ("in the absence of a ruling by the trial court, this Court has nothing to review") (citation and punctuation omitted). And this rule applies even where a party raised and argued an issue below, but the trial court declined to address the issue in its order. See *Zywiciel v. Historic Westside Village Partners*, 313 Ga. App. 397, 402 (5) (721 SE2d 617) (2011). We are aware of no law, however, holding that a party may not challenge on appeal a ruling of the trial court unless he can show that he, rather than some other party, provoked the ruling by affirmatively raising the issue in the trial court. Thus, given that the trial court's order expressly held that the execution of the Memorandum was not an ultra vires act, Sherman is entitled to challenge this conclusion on appeal.

13

Turning to the merits of Sherman's claim of error, we note that the conclusion that the execution of the Memorandum was not an ultra vires act, like the other holdings challenged by Sherman, cites to no legal authority and contains no analysis explaining how the court below arrived at this result. Accordingly, it provides us with no basis for meaningful review of Sherman's claim of error and consequently, we must vacate and remand the trial court's order. *Sherman II*, 317 Ga. App. at 352 (4) (b).

5. Sherman also asserted below that the Memorandum violated the Georgia Constitution[12] because it provides for a "window of time" during which the leasehold estate will be tax-exempt entirely. With respect to this objection by Sherman, the trial court concluded, as a matter of law, that "[t]he terms of the proposed bond transaction do[ ] not create a gap in time during which the property that is the subject of this transaction is illegally exempt from any taxation or [constitute] any other illegal tax exemption." Again, however, the order contains no findings of fact that support this

---

[12] Specifically, he asserted that the Memorandum violated Art. VII, Sec. I. Par. III (a) of the Georgia Constitution, which provides that: "All taxes shall be levied and collected under general laws and for public purposes only. Except as otherwise provided in subparagraphs (b), (c), (d), and (e), and (f) of this Paragraph, all taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

14

conclusion. Moreover, this legal conclusion fails to acknowledge the relevant language of the Georgia Constitution and it offers no analysis to explain why the Memorandum complies with that provision or why the transaction does not otherwise create an illegal tax exemption. On remand, therefore, the trial court must make findings of fact and conclusions of law sufficient to address this claim. *Sherman II*, 317 Ga. App. at 351 (4) (b).

For the foregoing reasons, the order of the court below is vacated. The case is remanded to allow the trial court to enter a new order on the Bond Validation Petition. Such order shall contain specific factual findings and conclusions of law necessary to explain any ultimate holdings of the trial court that: (i) the method used by DAFC to value the leasehold estate is valid under the requirements of *Harris* and *Sherman I*; (ii) the structure of the bond transaction does not violate OCGA § 36-62-8 (b); (iii) the execution of the Memorandum did not violate OCGA § 36-30-3 (a) and therefore did not constitute an ultra vires act; and (iv) the structure of the bond transaction does not create an unconstitutional tax exemption.

*Judgment vacated and case remanded with direction. Miller, P. J., and Ray, J., concur.*

15