**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 2, 2017**

# In the Court of Appeals of Georgia

A16A1741. DEVELOPMENT AUTHORITY OF COLUMBUS, JE-064
GEORGIA v. FOUR JS FAMILY, LLLP.

ELLINGTON, Presiding Judge.

Development Authority of Columbus, Georgia ("DACG") appeals from the trial court's orders granting Four JS Family, LLLP's motion for a preliminary injunction enjoining the closing of the sale by DACG of certain downtown Columbus commercial property and denying DACG's motion to dismiss Four JS's petition for injunction and temporary restraining order. DACG claims that the trial court's orders are based on an erroneous finding that the Development Authorities Law, OCGA §§ 36-62-1 through 36-62-14 (the "Act"), prohibits DACG from selling real property at less than fair market value except as provided in OCGA § 36-62-6 (a) (7.1). For the reasons set forth below, we agree with DACG and reverse.

This dispute arises out of DACG's agreement to sell a 1.75 acre tract of commercial property (the "Property") in downtown Columbus to Vision Hospitality Group, Inc. The record shows that the Property, which is currently used as a parking lot, is located across the street from the Columbus Ironworks Convention and Trade Center and also adjoins the Marriott Downtown Columbus Hotel, which is owned by plaintiff Four JS. DACG acquired the Property from the City in 2009. The City, from as early as 2001, and later, DACG, sought to have a hotel built and operated on the Property to support the Trade Center. In early 2016, Vision and DACG entered into an Agreement of Sale and Purchase (the "Sale Agreement") providing for, among other things, the sale of the Property to Vision for $50,000, and committing Vision, upon satisfaction of certain conditions, to construct a 125-room hotel and a parking garage thereon.

Four JS filed a petition for injunction and temporary restraining order seeking to enjoin DACG and Vision from proceeding in furtherance of the Sale Agreement. Four JS claimed that the DACG had violated OCGA § 36-62-6 by agreeing to sell the Property, which had been valued at $3 million in 2001, for less than fair market value. Four JS further asserted that it stood to be permanently and irretrievably harmed because it had spent $1.25 million to purchase a property in downtown Columbus for

2

the purpose of erecting a Hampton Inn hotel thereon, and that its opportunity to obtain a Hampton Inn franchise could be lost because Vision had submitted a competing franchise application founded on the Sale Agreement.

The trial court issued an order temporarily enjoining the closing of the Sale Agreement and set a hearing for determination of whether the temporary restraining order should be converted to a preliminary injunction. DACG moved to dismiss the petition for failure to state a claim upon which relief could be granted. At the subsequent hearing, the trial court first heard argument on the motion to dismiss, and it then held an evidentiary hearing on the preliminary injunction. The trial court granted a preliminary injunction enjoining the closing of the Sale Agreement until further order of the court and, in a separate order, denied DACG's motion to dismiss. DACG appeals from these orders.

1. We first consider whether, as DACG contends, the trial court erred in denying its motion to dismiss the petition pursuant to OCGA § 9-11-12 (b) (6) for failure to state a claim. At issue, the parties agree, is whether development authorities, such as DACG, are prohibited by statute from conveying real property at less than fair market value absent compliance with OCGA § 36-62-6 (a) (7.1).

3

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." (Citation and punctuation omitted.) *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014). In other words, "[i]f, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." (Citation and punctuation omitted.) Id. On appeal, we "review de novo a trial court's determination that a pleading fails to state a claim upon which relief can be granted, construing the pleadings in the light most favorable to the plaintiff and with any doubts resolved in the plaintiff's favor." (Citation and punctuation omitted.) *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750 (751 SE2d 545) (2013).

In its petition, Four JS asserts that, while development authorities are authorized to sell or otherwise dispose of real property under the Act, OCGA § 36-62-6 (a) (7.1) sets forth certain mandatory requirements in the case that a development authority disposes of real property for less than fair market value. Four JS alleges that DACG failed to comply with the Act because its board voted to sell the Property at less than fair market value without making a determination that the Property "no longer can be used advantageously as a project for the development of trade,

4

commerce, industry, and employment opportunities," as required by OCGA § 36-62-6 (a) (7.1), and because a sale at less than fair market value must be made to the State.[1] Rather, Four JS asserts, DACG's board approved the sale of the Property "for a project" and "for the stated purpose of building of a hotel by Vision." The trial court's order denying DACG's motion to dismiss (as well as its order granting the preliminary injunction), consistently with Four JS's contentions, found that the Act does not provide for the sale of real property at less than fair market value except as provided in OCGA § 36-62-6 (a) (7.1). DACG maintains that the trial court erred because neither OCGA § 36-62-6 (a) (7.1), nor the similarly worded OCGA § 36-62-6 (a) (7), apply to real property which can be used advantageously as a project.

In resolving this question, "we look to the literal language of the statute, the rules of statutory construction and rules of reason and logic, the most important of which is to construe the statute so as to give effect to the legislature's intent."

---

[1] In its appellate brief, Four JS also suggests that the Sale Agreement violated the constitutional prohibition against gifts and gratuities. See Ga. Const. of 1983, Art. III, Sec. VI, Par. VI (a) (1) ("Except as otherwise provided in the Constitution, (1) the General Assembly shall not have the power to grant any donation or gratuity or to forgive any debt or obligation owing to the public . . . ."). However, the trial court made no finding touching upon this question, which was not raised by the petition, and we do not reach the issue here. See *Lowery v. Atlanta Heart Assoc., P.C.*, 266 Ga. App. 402, 404 (2) (597 SE2d 494) (2004).

5

(Citation omitted.) *State v. Nix*, 220 Ga. App. 651, 652 (1) (469 SE2d 497) (1996).

See OCGA § 1-3-1 (a) ("In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy."). "[W]e apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citations omitted.) *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003).

The purposes of the Act "are to develop and promote trade, commerce, industry, and employment opportunities for the public good and the general welfare and to promote the general welfare of the state." OCGA § 36-62-9. The term "project," which may include real property, is used throughout the Act and is defined at great length in OCGA § 36-62-2 (6). The parties agree that the Sale Agreement was signed in connection with a "project," as defined under the Act.[2]

---

[2] Under the Act, a "project" is defined to include, among other things, "Hotel and motel facilities for lodging which also may provide meals, provided that such facilities are constructed in connection with and adjacent to convention, sports, or trade show facilities." OCGA § 36-62-2 (6) (H) (vi).

6

OCGA § 36-62-6 provides for the powers of development authorities. Thereunder, "[e]ach authority shall have all of the powers necessary or convenient to carry out and effectuate the purposes and provisions of this chapter, including, but without limiting the generality of the foregoing, the power[s]" set forth in OCGA § 36-62-6 (a). This includes, in pertinent part, the power under OCGA § 36-62-6 (a) (6), "[t]o sell, lease, exchange, transfer, assign, pledge, mortgage, dispose of, or grant options for any real or personal property or interest therein for any such purposes." OCGA § 36-62-6 (a) (6) does not place any restrictions on the sale of real property, including the sales price, other than the sale be "for any such purposes," and the general purpose of the Act, as noted above, is to develop and promote trade, commerce, industry, and employment opportunities. See OCGA § 36-62-9.

Four JS contends that the sale of the Property by the Authority at less than fair market value would nevertheless fail to comply with OCGA § 36-62-6 (a) (7.1). OCGA § 36-62-6 (a) (7) provides that an authority has the power:

> Except as otherwise provided in paragraph (7.1) of this Code section, to dispose of any real property for fair market value, regardless of prior development of such property as a project, whenever the board of directors of the authority may deem such disposition to be in the best interests of the authority *if the board of directors of the authority prior to such disposition shall determine that such real property no longer*

7

*can be used advantageously as a project* for the development of trade, commerce, industry, and employment opportunities.

(Emphasis supplied.).

OCGA § 36-62-6 (a) (7.1) provides that an authority has the power:

(7.1) Notwithstanding any other provision of this chapter to the contrary, to dispose of any real property for fair market value or any amount below fair market value as determined by the board of directors of the authority, regardless of prior development of such property as a project, whenever the board of directors of the authority may deem such disposition to be in the best interests of the authority *if the board of directors of the authority prior to such disposition shall determine that such real property no longer can be used advantageously as a project* for the development of trade, commerce, industry, and employment opportunities and if title to such real property is to be transferred to the state.

(Emphasis supplied.).

The plain language of the Act refutes Four JS's argument that OCGA § 36-62-6 (a) (7.1) divides all dispositions of real property by an authority into two categories, those that must be for fair market value, and those that may be for less than fair market value and require a declaration by the board of the authority that the real property can no longer be used advantageously as a project. Rather, reading

8

subsections (a) (7) and (a) (7.1) together, those subsections provide that an authority may sell real property at fair market value, without specific restriction as to the purchaser, or it may sell real property to the State at or below fair market value, but, in either case, only when "the board of directors of the authority prior to such disposition shall determine that such real property no longer can be used advantageously as a project for the development of trade, commerce, industry, and employment opportunities." OCGA §§ 36-62-6 (a) (7) and (a) (7.1). Because, as Four JS concedes, the subject sale is for a project under the Act, and the board has not determined the Property cannot be used as a project, the Sale Contract does not come within OCGA § 36-62-6 (a) (7) or OCGA § 36-62-6 (a) (7.1).[3]

---

[3] Nor would a sale of the Property at less than fair market value be inconsistent with OCGA § 36-62-7. That provision provides a project acquired under the Act shall not be operated by an authority or any municipal corporation, county, or other governmental subdivision, and must be leased, sold, or managed by, one or more persons, firms, or private corporations, but provides no requirement that any such sale be made at fair market value. See *Sherman v. Dev. Auth. of Fulton County*, 317 Ga. App. 345, 348 (2) n. 12 (730 SE2d 113) (2012) ("The projects developed pursuant to the Act must be leased to, sold to, or managed by a private entity. OCGA § 36-62-7."). On the other hand, "[a]ny disposition of real property by an authority pursuant to paragraph (7) of Code Section 36-62-6 shall be made to one or more persons, firms, corporations, or governmental or public entities." OCGA § 36-62-7. As explained supra, a sale under OCGA § 36-62-6 (a) (7) must follow the determination by the board that the real property cannot be used as a project, which is consistent with the provisions of OCGA § 36-62-7 providing that such a sale may be made to governmental or public entities, whereas a sale of a project must be to a private entity.

To put the foregoing in more general terms, the Act sets forth a statutory scheme which differentiates between real property used (or to be used) as a project and real property which an authority's board determines cannot be used as a project. A sale by an authority of the latter would not come within the Act's purpose of developing and promoting trade, commerce, industry, and employment opportunities, but is expressly allowed under conditions which require sales of such property to be made at fair market value to parties other than the State. Thus, Four JS is not entitled to relief on the ground that the DACG's agreement to sell the Property at less than fair market value "for a project," as the petition alleges, constituted a violation of OCGA § 36-62-6. It follows that the trial court erred in denying DACG's motion to dismiss the petition.

2. As the trial court erred in denying DACG's motion to dismiss the petition, it also erred in granting Four JS's request for a preliminary injunction on the basis that it was substantially likely that DACG's sale of Property at less than fair market value would violate OCGA § 36-62-6 (a) (7.1). See generally *Meinhardt v. Christianson*, 289 Ga. App. 238, 243 (3) (656 SE2d 568) (2008) (order ruling on motion for interlocutory injunction could not be affirmed as it rested on an erroneous legal theory).

*Judgment reversed. Branch and Mercier, JJ., concur.*